The PHILATELIC
FOUNDATION, Plaintiff,

v.

Alan KAPLAN, Robert C. Wurdeman, Robert C. Wurdeman, Inc., Mildred Wurdeman, Barry J. Rieger, Barry J. Rieger, Ltd., John Peters, Peters & Vogt, Inc., Gregory Stolow and J. & H. Stolow, Inc., Defendants.

No. 85 Civ. 8571 (RWS).

United States District Court,
S.D. New York.

Nov. 10, 1986.
As Amended Nov. 20, 1986.

Thomas J. Bonner, P.C., New York City, for plaintiff; Thomas J. Bonner, of counsel.

Bloch, Graff, Danzig, Jelline & Mandel, New York City, for defendant Alan Kaplan; Howard Graff, Neal S. Barlia, of counsel.

Beldock Levine & Hoffman, Robert C. Wurdeman and Robert C. Wurdeman, Inc., New York City, for defendants; Myron Beldock, Cynthia Rollings, of counsel.

SWEET, District Judge.

Defendant Alan Kaplan ("Kaplan"), joined by defendants Robert C. Wurdeman and Robert C. Wurdeman, Inc. (collectively "Wurdeman"), has moved under Rule 12(c), Fed.R.Civ.P., for judgment on the pleadings, alleging the inadequacy of the complaint of plaintiff The Philatelic Foundation (the "Foundation") with respect to its allegations of "pattern of racketeering activities" as required by 18 U.S.C. § 1962(a), (b), (c), the Racketeer Influenced Corrupt Organizations Act ("RICO"). For the reasons stated below the motion is granted, and judgment will be entered dismissing the RICO claims.

**Prior Proceedings**

■ Most relevant to this decision is the denial of Mildred Wurdeman's similar motion on May 9, 1986 in a memorandum opinion which concluded that her acts constituted "racketeering activity" under RICO. That conclusion is now reversed and is no longer the law of this case.[1]

---

1. The May 9 memorandum opinion is an interlocutory order subject to revision by the court on its own motion or on the motion of any party at any time before judgment. *See Luben Industries, Inc. v. United States,* 707 F.2d 1037, 1040 (9th Cir.1983).

## The Facts

No change has occurred with respect to the factual allegations since May and the earlier statement of the facts applies equally here.

By leave of this court the Foundation filed the First Amended Complaint ("complaint") on February 21, 1986. The complaint alleges violations of RICO and New York common law and prays for monetary damages and injunctive relief. A summary of the factual allegations follows.

The primary function of the Foundation is to issue opinions regarding the authenticity of stamps and other philatelic items in the form of a certificate. When a collector, dealer or auction house submits a stamp, the Foundation's experts examine it and render an opinion as to its quality and authenticity. Defendant Alan Kaplan ("Kaplan"), an employee of the Foundation, entered these opinions into the computer that printed the certificates. The Foundation asserts that such certificates greatly influenced the value of the stamps.

The Foundation's complaint alleges that in March, 1983, defendant Robert Wurdeman ("Wurdeman"), a stamp dealer, solicited Kaplan's cooperation in a scheme to fraudulently alter the Foundation's certificates. Under the scheme, Wurdeman and other dealers submitted stamps to the Foundation for an opinion of authenticity. When Kaplan received the expert committee's final opinion, he changed certain words (e.g., "not genuine" became "genuine") and produced a fraudulent certificate. Wurdeman, or the other dealers, sold these stamps at inflated prices due to the false certificates. Kaplan altered over 220 certificates before the Foundation discovered his activities in May, 1985. Defendants Robert Wurdeman, Inc., Barry J. Rieger ("Rieger"), Barry J. Rieger, Ltd., John Peters ("Peters") and Peters & Vogt, Inc. were all allegedly involved in this conspiracy to alter certificates and sell them at fraudulently inflated prices. The complaint alleges that defendant Mildred Wurdeman also knew of, and participated in, the conspiracy to alter certificates.

Between May, 1985 and October, 1985, defendants Wurdeman, Kaplan, Rieger and Peters were indicted by grand juries on charges arising out of this scheme. Kaplan pleaded guilty to mail fraud and fraudulently altering certificates, and Wurdeman pleaded guilty to mail fraud and conspiracy. Peters was acquitted after a jury trial conducted by this court, *United States v. Peters*, 84 Cr. 977 (RWS).

The general averments of a "pattern of racketeering activity" in paragraphs 418, 419 and 420 of the amended complaint are supported by paragraphs 30 through 355 in which the Foundation has alleged 328 separate criminal episodes involving mail fraud, wire fraud, violations of the Federal "travel act" and the interstate transportation of property procured by fraud. These "predicate acts" are alleged to have been performed pursuant to an organized, open-ended criminal conspiracy over a period of 26 months from March, 1983 until May, 1985.

Kaplan was indicted in the Southern District of New York and charged with wire fraud in connection with his role in the fraudulent alteration and procurement of "over" 200 certificates of authenticity from the Foundation from March, 1983 until May, 1985 and pleaded guilty to all charges in the indictment. *United States v. Kaplan*, 85 Cr. 548 (WCC). The criminal activities engaged in by Kaplan to procure the 200–plus fraudulent certificates underlying his indictment are included among the 328 predicate acts in the complaint.

Wurdeman was indicted in the Southern District of New York and charged with mail fraud and conspiracy in connection with his role in the fraudulent alteration and procurement of "approximately 247" certificates of authenticity from the Foundation from March, 1983 until May, 1985. Wurdeman pleaded guilty to all charges in the indictment. *United States v. Wurdeman*, 85 Cr. 548 (PKL). The criminal activities engaged in by Wurdeman to procure the 247 fraudulent certificates underlying his indictment are included among the 328 predicate acts in the complaint.

## The Background of RICO

██ The difficulties presented by RICO have been the subject of extensive review by the courts, *see Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), and commentators, *see* Nathan & Bograd, RICO Litigation's New Battleground: "Pattern" and "Enterprise," Civil RICO Litigation after *Sedima*, ALI–ABA Video Law Review 145 (Oct. 10, 1985), and has even been noted previously by this court in prior RICO opinions, *see, e.g., Rush v. Oppenheimer & Co.*, 628 F.Supp. 1188 (1985); *Crummere v. Brown*, 85 Civ. 1378 (April 3, 1986) [Available on WEST-LAW, DCTU database]. The threat that RICO may create federal jurisdiction for most garden variety state fraud cases is noted by the Foundation here and unquestionably provided the motivation for the corrective legislation which the last Congress in its closing moments narrowly failed to adopt. *See* Anti-Racketeering Law, Congressional Quarterly Weekly Report, Oct. 25, 1986, at 2708. Faced with the dilemma created by the statute, courts have struggled to reach principled conclusions using a variety of rationales.

This decision represents the paradigm of the conflict presented within the framework of a single case. Here criminal convictions have been obtained against three of the alleged conspirators for the very acts which are alleged to constitute a pattern of racketeering activity. Consequently this court earlier held that the predicate violations alleged in the complaint exhibit many separate acts occurring over a period of approximately two years. The conduct involved the same participants and employed the same procedures for altering the certificates and defrauding stamp purchasers. Such a series of 328 predicate acts sufficiently exhibited a "pattern" under the new *Sedima* standard. It appeared that if ever predicate acts constituted criminal activity, this was that case.

## Racketeering Activity

The weight of authority in this district as it has been developing has shifted. The relevant considerations and authorities have been marshalled in a characteristically comprehensive manner by the Honorable Leonard B. Sand in *Soper v. Simmons Int'l Ltd.*, 632 F.Supp. 244 (S.D.N.Y.1986), who then concluded that the acts there under consideration did not satisfy the racketeering activity requirement.

The requirements of pattern and continuity have been stated to require "different criminal episodes," *Professional Assets Management, Inc. v. Penn Square Bank, N.A.*, 616 F.Supp. 1418, 1421 (W.D.Okla, 1985), cited with approval by the Honorable Robert L. Carter in *Modern Settings, Inc. v. Prudential-Bache Securities, Inc.*, 629 F.Supp. 860, 864 (S.D.N.Y.1986), "multiple episodes of racketeering activity," *Utz v. Correa*, 631 F.Supp. 592, 595 (S.D.N.Y. 1986), and repeated criminal *activity*, not merely repeated *acts* to carry out the *same* criminal activity. *Northern Trust Bank/O'Hare, N.A. v. Inryco, Inc.*, 615 F.Supp. 828, 831 (N.D.Ill.1985), cited with approval by the Honorable Milton Pollack in *Anisfeld v. Cantor Fitzgerald & Co.*, 631 F.Supp. 1461, 1467 (S.D.N.Y.1986). The distinction between acts and activity may be just as elusive as the concept of continuity. However, here the criminal acts are repetitive and in furtherance of the overarching scheme, the use of fraudulent certificates issued by the Foundation.

The distinction may be illustrated by the difference between *Rush*, in which churning and separate misrepresentations were held to constitute a pattern, and *Crummere* in which transferring funds and making misrepresentations were held not to constitute a pattern—the fine line is difficult to discern.

Counsel for the Foundation offers the following challenge:

> Movants urge this Court to interpret the RICO statute to the effect that a "pattern" cannot "be comprised of predicate segments of one criminal project." (Kaplan Memorandum, page 1.) Not only is this interpretation contradicted by the very cases cited by defendants, but its adoption would totally emasculate the RICO statute. Thus, a mafia takeover of

**1348**

a labor union (Kaplan's "criminal project") achieved through extortion, blackmail, murder and mail fraud (Kaplan's "predicate segments") would fall outside the scope of RICO for failure to constitute a "pattern."

What counsel thus asks is can there ever be a pattern of criminal activity under RICO if the criminal acts have continuity and are related to a single criminal purpose? The distinction must turn on the differing qualities of the criminal acts to determine whether or not the criminal activities necessary to a pattern have been established. Here they have not.

■ Although no federal cause remains, the state causes will be retained under the court's ancillary jurisdiction. Prior to Wurdeman's motion for judgment on the pleadings, the state law claims, deriving from the same nucleus of operative fact as the federal claim, were clearly within this court's jurisdiction. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Hargrave v. Oki Nursery, Inc.*, 646 F.2d 716 (2d Cir.1980). This court's decision to dismiss the RICO claims does not destroy its jurisdiction over the state law claims. *See Rosado v. Wyman*, 397 U.S. 397, 405, 90 S.Ct. 1207, 1214, 25 L.Ed.2d 442 (1970):

> We are not willing to defeat the common sense policy of pendent jurisdiction—the conservation of judicial energy and the avoidance of multiplicity of litigation—by a conceptual approach that would require jurisdiction over the primary claim at all stages as a prerequisite to resolution of the pendent claim.

*Id.* Jurisdiction may properly be exercised where "substantial time and energy have been expended," *id.* at 404, 90 S.Ct. at 1213, or where "judicial economy, convenience, and fairness to litigants would be disserved by dismissal of the pendent claim." *Gateway Industries, Inc. v. Agency Rent A Car, Inc.*, 495 F.Supp. 92, 95 n. 5 (N.D.Ill.1980).

Given the particular circumstances of this litigation, the anticipated completion of discovery in the near future, the familiarity

of the court with the issues and all the proceedings heretofore had, jurisdiction of the remaining claims will be retained.

Judgment will be entered on the pleadings dismissing the RICO claims.

IT IS SO ORDERED.