Park Dean KAUFFMAN; Gaila
M. Kauffman, Appellants,

v.

ANGLO–AMERICAN SCHOOL OF
SOFIA, an Unincorporated
Association, Appellee.

No. 92–5302.

United States Court of Appeals,
District of Columbia Circuit.

Argued Feb. 22, 1994.

Decided July 12, 1994.

Stephen H. Galebach, Gaithersburg, MD, argued the cause and filed the briefs, for appellants.

Andrew C. Topping, Baltimore, MD, argued the cause for appellee. With him on the brief were Paul C. Skelly and David G. Leitch, Washington, DC., William D. Nussbaum, Washington, DC, entered an appearance.

Before MIKVA, Chief Judge, WILLIAMS and SENTELLE, Circuit Judges.

Opinion for the Court filed by Circuit Judge STEPHEN F. WILLIAMS.

Concurring Opinion filed by Circuit Judge SENTELLE.

Dissenting Opinion filed by Chief Judge MIKVA.

STEPHEN F. WILLIAMS, Circuit Judge:

 Park Dean Kauffman and Gaila M. Kauffman appeal the district court's dismissal of their suit against the Anglo–American School of Sofia. Our disposition is controlled by *FDIC v. Meyer*, —— U.S. ——, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994), which holds that a federal agency—even one as to which Congress has waived sovereign immunity—is not subject to liability in damages under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). We conclude that an entity that is not a federal agency, but that is constrained by the Constitution in some or all of its acts solely because of *lesser* links to the federal government, is equally exempt from *Bivens* liability. Because the Kauffmans' only federal claims against the School rest on *Bivens*, we affirm the dismissal of the action.

\* \* \* \* \* \*

The Anglo–American School of Sofia was established in 1967 to provide elementary-level instruction to the children of American and British diplomats stationed in Sofia, Bulgaria. Though it was allegedly set up at the initiative of the U.S. Department of State, its amended charter proclaims that it is "a private and independent organisation" and "is not a subsidiary" of either the British or the American government. Still, the American and the British ambassadors to Bulgaria each appoint three members of the School's 7-person governing board,[1] and all three of the American ambassador's appointees are State Department employees. The School also receives part of its funding from the State Department.

Beginning in August 1984, Park Dean Kauffman served as Director of the School. Gaila M. Kauffman, his wife, was a teacher at the School. According to their complaint, both Kauffmans were under contract with the School through June 15, 1991. But in June 1989, the School's governing board fired Mr. Kauffman. Mrs. Kauffman resigned her employment in order to remain with her husband.

Both Kauffmans filed suit in the United States District Court for the District of Columbia against the School and the three individual board members who had been appointed by the American ambassador. Their ini-

---

1. The School's charter indicates that the board has only six members, but the parties seem to agree that in fact it has seven. There is some dispute as to whether the seventh member is appointed by the Chairman of the Board or elected by the parent-teacher association.

tial complaint raised no federal questions; jurisdiction was based instead on diversity of citizenship. Claiming breach of contract, tortious interference with contractual relations, wrongful discharge, and defamation, the Kauffmans sought compensatory damages of $300,000 and punitive and exemplary damages of $100,000.

■ In suing the School, however, the Kauffmans had failed to take account of its status as an unincorporated association. Under Federal Rule of Civil Procedure 17(b), an unincorporated association's capacity to be sued "shall be determined by the law of the state in which the district court is held". The one exception to this principle—that any unincorporated association "may sue or be sued in its common name for the purpose of enforcing for or against it a substantive right existing under the Constitution or laws of the United States"—was not triggered because the Kauffmans had raised no federal claims. And the District of Columbia does not allow unincorporated associations to be sued in their own names, at least over matters of local law. *Pritchett v. Stillwell,* 604 A.2d 886, 889 (D.C.1992); *Lenkin v. Beckman,* 575 A.2d 273, 277–78 (D.C.1990); *Day v. Avery,* 548 F.2d 1018, 1022–23 (D.C.Cir.1976); cf. Rules of Civil Procedure of the Superior Court of the District of Columbia, Rule 17(b). Accordingly, the School moved to dismiss the action against it.

The Kauffmans then amended their complaint. By this time, the U.S. Attorney's Office for the District of Columbia had certified that the individual defendants "were acting within the scope of their employment as employees of the United States" at the time of Mr. Kauffman's firing, with the result that the United States had been substituted as the party defendant with respect to the Kauffmans' tort claims against the individual board members. See 28 U.S.C. § 2679(d)(1). The Kauffmans' amended complaint added

no new claims against the United States or the individual board members. But the complaint now alleged that the School "is controlled by the U.S. Government" and that its firing of Mr. Kauffman had violated the First and Fifth Amendments. Since the Kauffmans continued to seek only damages and not any equitable relief, their federal claims thus rested on *Bivens.*[2]

The district court dismissed the Kauffmans' suit against all defendants. As to the School, the court held that it could not be considered a "government actor" under *Blum v. Yaretsky,* 457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982). Mem.Op. at 5, 10. The Kauffmans appealed, but they expressly did not oppose the motion of "the federal appellees"—that is, the United States and the three individual board members—for summary affirmance. A panel of this court granted the unopposed motion on April 6, 1993. All that remains of this case, then, is the Kauffmans' suit against the School itself.

The *Bivens* claims are the linchpin of the Kauffmans' entire suit. Because the School is an unincorporated association, Rule 17 bars any suit in the absence of a federal claim. (Indeed, even with a viable federal claim, we might have no jurisdiction over the non-federal claims; federal courts lack pendent jurisdiction over claims that could not be brought in state court, see *Promisel v. First Amer. Artificial Flowers, Inc.,* 943 F.2d 251, 257 (2d Cir.1991); cf. *Local 20, Teamsters, Chauffeurs & Helpers Union v. Morton,* 377 U.S. 252, 257, 84 S.Ct. 1253, 1257, 12 L.Ed.2d 280 (1964), and it is not clear whether an unincorporated association may be sued in its own name in District of Columbia courts on non-federal claims even when those claims are appended to a federal claim.)

■ In the initial round of briefing the parties argued about whether the district court had erred in cutting short this litigation

---

2. These claims coexist uneasily with another aspect of the Kauffmans' complaint. Presumably in an effort to defeat claims of official immunity in their suit against the *individual* defendants, the Kauffmans specifically alleged that the board members served in their "private and individual capacity" rather than as agents of the federal government. Indeed, the Kauffmans initially had characterized their entire case as "involv[ing] common law claims" rather than constitutional ones. "There is no plausible way," they had said, "to read Plaintiffs' Complaint as a *Bivens* action." Memorandum in Opposition to Defendants' Motions for a Protective Order (Mar. 13, 1990) at 2.

by finding that the School was not sufficiently linked to the federal government to subject its treatment of the Kauffmans to constitutional limitations. The day after oral argument, however, the Supreme Court unanimously ruled that *Bivens* liability does not run against a federal agency, but only against individual federal agents. *FDIC v. Meyer*, — U.S. —, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994). We requested supplemental briefing on whether a *Bivens* action may be brought against an entity like the School or only against the individual board members. Cf. *United States Nat'l Bank of Oregon v. Independent Ins. Agents of America*, — U.S. —, — – —, 113 S.Ct. 2173, 2178–79, 124 L.Ed.2d 402 (1993).

■ Of course, no *Bivens* action could conceivably lie unless the School is a federal actor, in the sense that its termination of Mr. Kauffman's employment can be attributed to the federal government for purposes of the First and Fifth Amendments. Even if the School is a federal actor, however, it is not a federal agency: it is plainly a different sort of entity than the FSLIC, the agency at issue in *Meyer*. Still, the differences between a federal agency and an artificial person that is a federal actor seem to weaken, rather than strengthen, the case for a *Bivens* remedy. The remedy exists solely as a response to the problem of unconstitutional federal action. The presence of federal action here would be crystal clear if the School were part of a federal agency, but *Meyer* makes plain that even then a *Bivens* action would lie only against the offending individuals and not the School (even if the School had the capacity to sue and be sued, like the FSLIC). That the School's link to federal authority is more tenuous does not make a *Bivens* remedy against it any *more* appropriate.

■ We do not think it matters whether the School is portrayed as an "all-purpose" federal actor or only as a federal actor with respect to the termination decision at issue here. Under either theory, the Kauffmans enjoy a constitutional claim only to the extent that the School's decision to terminate Mr. Kauffman's employment can be analogized to the decision of a federal agency. We think it

untenable to draw this analogy for purposes of *Bivens* but not for purposes of *Meyer*.

To be sure, a panel of this court—albeit without an opinion that commanded a majority—once permitted a *Bivens* action to be brought against a private corporation whose agents had allegedly taken actions at the behest of, and in conjunction with, the federal government. See *Reuber v. United States*, 750 F.2d 1039, 1053–60 (D.C.Cir.1984) (opinion of Wald, J.); *id.* at 1063–65 (opinion of Bork, J.). Other circuits have allowed similar suits. See *Schowengerdt v. General Dynamics Corp.*, 823 F.2d 1328, 1337–38 (9th Cir.1987); *Dobyns v. E–Systems, Inc.*, 667 F.2d 1219 (5th Cir.1982); *Yiamouyiannis v. Chemical Abstracts Serv.*, 521 F.2d 1392 (6th Cir.1975) (per curiam). Even the most thorough of these opinions, however, focused entirely on the question of whether *Bivens* could be extended from suits against conventional federal agents to ones against ostensibly "private" parties who are alleged to be federal actors—a topic of some controversy, see, e.g., *Fletcher v. Rhode Island Hosp. Trust Nat'l Bank*, 496 F.2d 927, 932 n. 8 (1st Cir.1974) (refusing to allow such actions); *DeVargas v. Mason & Hanger–Silas Mason Co., Inc.*, 844 F.2d 714, 720 n. 5 (10th Cir. 1988) (reserving this question). Having answered that question in the affirmative, *Reuber* and its fellow cases simply assumed without analysis that private *entities* were no less susceptible to *Bivens* actions than private *individuals*. See, e.g., *Reuber*, 750 F.2d at 1058 (Wald, J.) ("private status ... is not alone sufficient to counsel hesitation in implying a damages remedy"). Even before *Meyer*, other courts had rejected this assumption. See *Shannon v. General Electric Co.*, 812 F.Supp. 308, 323 (N.D.N.Y.1993) (dismissing *Bivens* complaint because it was filed against private corporation instead of against individual corporate officers). But whatever its intrinsic appeal, *Reuber*'s assumption does not survive *Meyer*.

In fact, *Reuber*'s own logic counsels the rejection of this assumption in light of *Meyer*. The driving principle behind *Reuber* was that when a defendant is sufficiently connected to the government that his acts are subject to constitutional constraints, the avail-

ability of the *Bivens* remedy should not turn on the defendant's nominal status as "private" or "public". When that reasoning is combined with *Meyer*'s conclusion that public federal agencies are not subject to *Bivens* liability, it follows that equivalent private entities should not be liable either. Despite the dissent's claims then, our holding respects rather than erodes *Reuber*'s basic principle: it affords the Kauffmans precisely the same *Bivens* remedies that they would have if the School were really a federal agency, as they claim it effectively was for purposes of its decision to fire Mr. Kauffman.

The dissent is on slightly firmer ground when it attempts to distinguish *Meyer*'s reasoning from the case at hand. As it observes, *Meyer* asserted that the purpose of the *Bivens* remedy is to deter unconstitutional actions by federal actors. See *Meyer*, — U.S. at ——, 114 S.Ct. at 1005. But see *Bivens*, 403 U.S. at 397, 91 S.Ct. at 2005; *id.* at 407–08, 91 S.Ct. at 2010–11 (Harlan, J., concurring). *Meyer* argued that if given a choice, plaintiffs would have every reason to sue a federal agency instead of its individual officials, because this tactic would circumvent the qualified-immunity defenses that the individuals might be expected to raise. To the extent that aggrieved parties no longer brought damages actions against individual officers, *Meyer* continued, "the deterrent effects of the *Bivens* remedy would be lost". — U.S. at ——, 114 S.Ct. at 1005. Accordingly, to recognize *Bivens* actions against federal agencies would undermine *Bivens* itself.

The dissent contends that this reasoning does not apply in the context of private entities like the School, because we have afforded those entities the same qualified immunity as their agents enjoy. See *Reuber*, 750 F.2d at 1057 n. 25 (opinion of Wald, J.); *id.* at 1063–64 (opinion of Bork, J.). This argument has some force. But the premise of *Meyer* is that individual agents are not deterred by the threat of suit against their employers. If so, and if *Meyer* is correct about the purpose of *Bivens* remedies, then there would seem to be no affirmative reason to allow *Bivens* actions against entities of any sort, private or public. Further, on *Meyer*'s logic, provision

of a damages remedy against a private entity would actively diminish the deterrent value of the remedy against the individual (though less than would a remedy against a federal agency enjoying no immunity at all). If such additional defendants were available (often with deeper pockets than the individual offenders), plaintiffs might make the same choice as the Kauffmans, who brought their *Bivens* actions *only* against the private entity and not against the individual board members. Even if plaintiffs sued both entity and individuals, they would likely focus collection efforts against the entity, with effects only partly blunted by the entity's rights to contribution. To the extent that plaintiffs make such choices with any regularity, *Meyer* indicates that the deterrent effect of the *Bivens* remedy would be weakened. In sum, on *Meyer*'s deterrence rationale there is no affirmative reason to recognize *Bivens* actions against private entities, and there is some reason *not* to do so.

*Meyer*, moreover, advanced an independent ground for its decision. According to the Court, it was up to Congress to decide the questions of federal fiscal policy raised by the prospect of direct actions for damages against federal agencies; the potentially large financial drain on the government constituted a "special factor[ ] counselling hesitation" against the judicial creation of such a damages remedy. *Meyer*, — U.S. at —— – ——, 114 S.Ct. at 1005–06 (quoting *Bivens*, 403 U.S. at 396, 91 S.Ct. at 2004). The Kauffmans are wrong to claim that this rationale is inapplicable here. According to Mr. Kauffman's own affidavit, the School was established primarily to serve the federal government's interest in meeting the educational needs of its diplomats' families; it is this same interest that explains the federal government's continuing grants to the School. See 22 U.S.C. § 2701. If funds are diverted from the School's coffers to liability payments, the government presumably will have to choose between allowing its interest to be served less well and spending more money to make up the shortfall—precisely the same choice that it would confront if *Bivens* actions could be brought against federal agencies. In other words, diversion of resources from a private entity created to

advance federal interests has effects similar to those of diversion of resources directly from the Treasury.

More generally, *Meyer* expressed considerable reluctance to extend *Bivens* remedies beyond the sort of situation involved in *Bivens* itself. "In our most recent decisions," the Court noted, "we have 'responded cautiously to suggestions that *Bivens* remedies be extended into new contexts.'" *Meyer*, —— U.S. at ——, 114 S.Ct. at 1005 (quoting *Schweiker v. Chilicky*, 487 U.S. 412, 421, 108 S.Ct. 2460, 2466, 101 L.Ed.2d 370 (1988)). Despite the one precedent in this circuit assuming that *Bivens* actions may be brought against private entities if they may be brought against private individuals, and the handful of cases from other circuits making the same assumption,[3] we think the present case presents such a "new context[ ]".

Ultimately, however, our view that *Meyer* controls this case springs less from *Meyer*'s reasoning than from its interaction with *Bivens* itself. As Judge Wald observed in *Reuber*, "It is axiomatic that a *Bivens* action can be brought only against one who is engaged in governmental ... action...." *Reuber*, 750 F.2d at 1054 (opinion of Wald, J.). The dissent's position—that *Bivens* actions against private entities should be recognized *precisely because* those entities are not part of the government—therefore seems perverse.

■■■■■ The Kauffmans advance two additional arguments that are similarly unpersuasive. To the extent that they rely on principles of sovereign immunity to explain why private entities might be susceptible to *Bivens* actions even though federal agencies are not, they ignore *Meyer*; there, the Supreme Court explicitly stated that the FSLIC was not subject to *Bivens* liability *even though* Congress had waived its sovereign immunity. —— U.S. at ——–——, 114 S.Ct. at 1004–05. The Kauffmans also claim

that Federal Rule of Civil Procedure 17(b), which appears to contemplate suits against unincorporated associations for the purpose of enforcing constitutional rights, presupposes the existence of *Bivens* remedies against entities like the School. But as Rule 17(b) is entirely understandable in terms of providing a forum for equitable relief, there is absolutely no basis for the inference the Kauffmans would draw. Indeed, Rule 17(b) was adopted in 1937, four decades before *Bivens* and five before *Reuber*.

We affirm the district court's dismissal of the Kauffmans' suit.

*So ordered.*

SENTELLE, Circuit Judge, concurring:

I am in complete agreement with the opinion of the court, and write separately to emphasize what the court is not doing. Mrs. Kauffman sues the Anglo–American School on the basis that its discharge of her husband creates some separate cause of action in her. Though we do not reach the question in light of our disposition of the case on other threshold grounds, I do not understand the court to be creating any precedent for or lending any credence to the notion that an allegedly unlawful firing of one family member creates any claim for relief on the part of another family member that would survive a motion for dismissal under FED.R.CIV.P. 12(b)(6).

MIKVA, Chief Judge, dissenting:

Circuit precedent unambiguously permits plaintiffs to bring *Bivens* actions against private state actors, entities as well as individuals. *Reuber v. United States*, 750 F.2d 1039 (D.C.Cir.1984). The Supreme Court recently held that *federal agencies* are not subject to *Bivens* suits. *FDIC v. Meyer*, —— U.S. ——, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994). Despite our prior decision in *Reuber*, the majority here chooses to create a highly debatable

---

3. Two of the four circuits listed in the dissent as allowing plaintiffs to bring *Bivens* actions against private entities, Dissent at 1228–29, do not seem to us to do so. As the dissent recognizes, *Morast v. Lance*, 807 F.2d 926, 930 n. 5 (11th Cir.1987), merely assumed such liability without deciding it, going on to reject plaintiff's claim on other grounds. As for *Yiamouyiannis v. Chemical Ab-*

*stracts Service*, 521 F.2d 1392 (6th Cir.1975) (per curiam), the Sixth Circuit subsequently seemed to reverse its field, suggesting that *Bivens* actions do not lie against private defendants of *any* sort. See *Wagner v. Metropolitan Nashville Airport Auth.*, 772 F.2d 227, 230 (6th Cir.1985); cf. *id.* at 231 n. 1 (Martin, J., concurring).

extension of *Meyer*'s holding to deny appellant's suit against a *private association* that appellant alleges to be a state actor. Because this result is by no means commanded by *Meyer*, but instead represents a choice between possible alternatives, the panel was bound to abide by clear circuit precedent favoring one of those alternatives. *E.g., Brewster v. Commissioner of Internal Revenue,* 607 F.2d 1369, 1373–74 (D.C.Cir.1979). It did not. Moreover, *Reuber* furthers the original purpose of *Bivens*—affording a damages remedy to those aggrieved by unconstitutional actions—and I am loath to see that purpose undermined because a new panel disapproves of it. Accordingly, I dissent.

## I.

In *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the Supreme Court found an implied damages remedy against federal officers under the Constitution. Most circuits that have considered the issue, including this one, have extended the *Bivens* remedy to private defendants who are agents of the federal government subject to constitutional restraints under the "state action" doctrine. *Reuber v. United States,* 750 F.2d 1039 (D.C.Cir.1984); *Schowengerdt v. General Dynamics Corp.,* 823 F.2d 1328, 1337–39 (9th Cir.1987); *Dobyns v. E–Systems, Inc.,* 667 F.2d 1219 (5th Cir.1982); *Yiamouyiannis v. Chemical Abstracts Service,* 521 F.2d 1392, 1393 (6th Cir. 1975); * *see also Morast v. Lance,* 807 F.2d 926, 930 & n. 5 (11th Cir.1987) (assuming without deciding). And this Circuit—like every one of those circuits—allows plaintiffs to bring *Bivens* actions against nongovernmental *entities* as well as individuals. *Reuber,* 750 F.2d at 1053–61 (opinion of Wald, J.); *id.* at 1063–65 (opinion of Bork, J.).

Our opinion in *Reuber* was fully consistent with the policies of *Bivens* itself. Like *Bivens, Reuber* relied on the historical availability of a damages remedy "for an invasion of personal interests in liberty." 750 F.2d at 1056 (quoting *Bivens,* 403 U.S. at 395, 91 S.Ct. at 2004). In light of this history, *Bivens* and subsequent cases have held that the Constitution incorporates a damages remedy, which courts must recognize unless Congress has provided an equally effective alternative remedy. *Bivens,* 403 U.S. at 395–97, 91 S.Ct. at 2004–05; *Carlson v. Green,* 446 U.S. 14, 18–19, 100 S.Ct. 1468, 1471–72, 64 L.Ed.2d 15 (1980). In *Reuber,* this Circuit extended the *Bivens* remedy to private entity state actors: two private corporations accused of violating an employee's First Amendment rights as agents of the federal government. The court reasoned that if the Constitution contains its own damages remedy, that remedy lies (absent "special circumstances") against certain private parties who happen to be subject to constitutional constraints, as well as against federal officials. *Reuber,* 750 F.2d at 1054–61 (opinion of Wald, J.); *id.* at 1063–65 (opinion of Bork, J.). A defendant's "private status" was not enough to defeat the *Bivens* remedy if the defendant acted as an agent of the federal government. 750 F.2d at 1058 (opinion of Wald, J.); *id.* at 1063–65 (opinion of Bork, J.).

One member of the panel, Judge Starr, dissented in *Reuber.* 750 F.2d at 1069–76. But even Judge Starr would not have gone so far as to disallow all *Bivens* suits against private entity state actors—the route the majority chooses today. Instead, his dissent argued (*inter alia*) that the employer-employee relationship between one of the corporate defendants and the plaintiff was a "special factor" that should defeat *Bivens. Id.* at 1072–73 (Starr, J., dissenting). In our case, of course, we also have an employer-employee relationship between the alleged state actor and the complainant. But this time, the right of action is denied. Curiously, the pan-

---

* I do not think the Sixth Circuit has overruled *Yiamouyiannis.* A fair reading of the *Wagner* case cited by the majority shows unequivocally that it was decided on other grounds, namely, that plaintiffs had not alleged in their complaint that defendants were federal actors. *Wagner v. Metropolitan Nashville Airport Authority,* 772 F.2d 227, 230 (6th Cir.1985); *id.* at 230–31 (Mar-

tin, J., concurring). Moreover, even if the *Wagner* panel had sought to overrule *Yiamouyiannis* (which it did not), its attempt would have been invalid. Like this Circuit, the Sixth Circuit observes *stare decisis* by forbidding one panel to overrule another. *E.g., Salmi v. Secretary of HHS,* 774 F.2d 685, 689 (6th Cir.1985).

el's result in the present case seems to vindicate the concerns of *Reuber*'s dissent, rather than those of its majority. In sum, the majority's opinion in this case flies in the face of *Reuber,* a binding precedent, which holds that *Bivens* suits against private entity state actors are permissible absent special circumstances.

In *FDIC v. Meyer,* —— U.S. ——, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994), the Supreme Court decided a different question: whether *Bivens* permits a direct suit against a *federal agency* for constitutional violations. The Court determined that such a remedy is unavailable. To hold *Meyer* to exclude *private entities* from *Bivens* coverage, we would have to presume that it tacitly overruled or fatally undermined all of the above-cited cases permitting *Bivens* suits against private entity state actors. *See supra* at 1228–29. If it did not, then we have no authority to overrule the *Reuber* panel's decision. *See Brewster v. Commissioner of Internal Revenue,* 607 F.2d 1369, 1373–74 (D.C.Cir.1979) (explaining that future panels are bound to follow precedent set by previous panels until the en banc court or Supreme Court overrules that precedent).

But the *Meyer* Court made no reference to private state actors. Nor did the Court intimate that an inventive circuit court might stretch *Meyer*'s narrow holding to eviscerate longstanding remedies. Quite the contrary. In *Meyer,* the Supreme Court emphatically noted the complete absence of circuit court precedent for applying *Bivens* to a federal agency; indeed, the Court based its decision in large part on the novelty of such a remedy. —— U.S. at ——, 114 S.Ct. at 1005. Thus, the Court acted with the explicit understanding that it did not need to overrule any precedent in order to reach the result it did. In contrast, in our case a great deal of precedent in many circuits supports a *Bivens* action against a private entity state actor. *See supra* at 1228–29. In general, I think it imprudent to presume that the Supreme Court intended to overrule longstanding circuit precedent unless that result is (at the very least) clearly the most sensible reading of the relevant cases. I think law-of-the-circuit principles demand this much defer-

ence. And *Meyer,* in which the Court not only was silent about private entities but also emphasized the lack of precedent for permitting direct suits against federal agencies, merits particular caution.

Such caution pays off here when one examines the differences between suits against a federal agency and suits against private entity state actors. Indeed, it soon becomes apparent that the cases are easily distinguishable in terms of the *Meyer* Court's own reasoning. Because the Court could reasonably have intended—and probably did intend—to prohibit suits against agencies while leaving intact the circuit courts' majority rule permitting suits against private entities, we ought to read *Meyer* as coexisting with, rather than overruling, the above-cited precedent.

Aside from the *Meyer* Court's apparent intention not to overrule any precedent, I see two principal distinctions on the merits that appear dispositive. First, the Court in *Meyer* seemed primarily concerned with the potential for direct suits against agencies to undermine the deterrence rationale of *Bivens.* —— U.S. at ——, 114 S.Ct. at 1005. Of course, *Bivens* itself was not concerned primarily with deterrence, *see* 403 U.S. at 407–08, 91 S.Ct. at 2010–11 (Harlan, J., concurring in the judgment), but because the question is whether *Meyer* is controlling we must ask whether the deterrence rationale as expressed in that case extends to private entities. I think that rationale is far less compelling for private entities than for agencies. *Meyer* holds that deterrence would be undermined because an agency, unlike an individual officer, has no qualified immunity against suit; so, given a choice, every plaintiff would choose to sue the agency directly instead of the potentially-immune employee. —— U.S. at ——, 114 S.Ct. at 1005. That concern is not present in the case of a private entity, which has the exact same qualified immunity as its individual employees. *Reuber,* 750 F.2d at 1057 n. 25 (opinion of Wald, J.); *id.* at 1063–65 (opinion of Bork, J.). A plaintiff would gain no substantial advantage from suing the entity directly.

The majority's response is simply that *any* weakening of deterrence to individual officers

is enough reason to deny a remedy under *Meyer.* Maj. op. at 1226–27. I do not see where that is written in the case; nor do I think the Court implied it. *Meyer* fears a *substantial and specific* erosion of deterrence, and the majority seems to agree that the "erosion" from this case (never mind that it is a longstanding rule of law and not a novel remedy) is much less severe. Maj. op. at 1227. The majority, then, is just reading what it would like to read into *Meyer.* Contrary to the majority, I think there is "no affirmative reason" to believe the deterrence rationale extends to such *de minimis* circumstances. *See* maj. op. at 1227.

Second, the *Meyer* Court observed that it would exempt agencies from *Bivens* even if deterrence were not an issue, because of the potential financial burden on the federal government. —— U.S. at ——–——, 114 S.Ct. at 1005–06. I think this concern is far weaker here. For one thing, this is a *preexisting* burden, as courts have already extended *Bivens* liability to private entities that are state actors. To my knowledge, no defendant has ever raised the possible bankruptcy of the federal government—or any lesser federal fiscal tragedy—as a defense. In addition, judgments for plaintiffs in these cases are not nearly as burdensome to the federal government as suits against federal agencies. Private state actors often are government-controlled only for a limited purpose, so there is no reason to think the losses would come out of the federal treasury in the ordinary case.

The majority has taken a tangentially-related Supreme Court opinion as an excuse to overrule a prior panel's opinion that the present panel's majority does not like. The majority apparently believes it knows how the Supreme Court would decide Mr. Kauffman's case. Perhaps it is correct, and perhaps it is not. But the Supreme Court has not yet decided such a case—either directly or through the back door—and until it does we must adhere to the current law. *Reuber* is the law of this Circuit, even after *Meyer,* and the majority here exceeds its authority by purporting to overrule circuit precedent.

## II.

My disagreement becomes a dissent because, proceeding to the merits of Mr. Kauffman's state action claim, I think he has stated a cause of action. Mr. Kauffman claims he was unconstitutionally discharged from his position as director of the Anglo–American School of Sofia by the votes of the American members of the School Board, who are also employees of the United States Department of State. He alleges that his discharge resulted after he complained to the Board Members' State Department superiors about claimed financial improprieties. The United States Attorney has certified for purposes of the Federal Tort Claims Act that the Board Members were acting within the scope of their employment when they fired Mr. Kauffman.

I think these allegations suffice to state a constitutional claim. Mr. Kauffman has alleged that a majority of the School Board acted as agents of the federal government—within the scope of their employment—when they fired him. This creates a "nexus" between the state regulation and the challenged action as required by *Blum v. Yaretsky,* 457 U.S. 991, 1004, 102 S.Ct. 2777, 2785, 73 L.Ed.2d 534 (1982). Moreover, if Mr. Kauffman were able to prove that the State Department superiors somehow ordered or caused his discharge, this plainly would constitute state action. *See id.* (state action exists where state provides "significant encouragement" for the private act). I would reverse the district court's dismissal of this action.