Austen NWANZE, et al., Plaintiffs,

v.

PHILIP MORRIS INCORPORATED, Philip Morris Companies, Inc., RJR Nabisco Holdings Corp., R.J. Reynolds Tobacco Company, Brown & Williamson Tobacco Company Corporation, B.A.T. Industries P.L.C., British American Tobacco Company Limited, Bat (U.K. & Export) Limited, Lorillard Tobacco Company, the American Tobacco Company, Liggett Group Inc., the Counsel for Tobacco Research—U.S.A., Inc., the Tobacco Institute, Inc., Loews Corporation, United States Tobacco Company, and Kathleen Hawk, Director of Bureau of Prisons, Defendants.

No. 97 CIV. 7344(LBS).

United States District Court, S.D. New York.

June 7, 2000.

Austen Nwanze, pro se.

Mary Jo White, U.S. Atty., Jonathan A. Willens, Assist. U.S. Atty., New York City, for Southern Dist. of New York.

Dechert Price & Rhoads, New york City, by Robert A. Cohen, Amianna Stovall, Peter Critchell, for Philip Morris Inc.

Jacob, Medinger & Finnegan, LLP, New York City, by Barry S. Schaevitz, David R. Crittenden, for U.S. Tobacco Co.

Seward & Kissel, New York City, by Jack Yoskowitz, for Tobacco Institute.

Debevoise & Plimpton, New York City, by Steven Klugman, Harry Zirlin, for Council for Tobacco Research.

Jones, Day, Reavis & Pogue, New York City, by Harold K. Gordon, for RJR Nabisco Holdings Corp., R.J. Reynolds Tobacco Co.

King & Spalding, New York City, by Michael Norton, for Batus Inc., Brown & Williamson Tobacco Corp.

Kasowitz, Benson, Torres & Friedman, New York City, by Aaron Marks, for Liggett Group Inc., Liggett and Myers Tobacco Co., Inc.

Greenberg, Traurig, Hoffman, Lipoff, Rosen & Quentel, P.A., New York City, by Alan Mansfield, for Lorillard Tobacco Co., Inc.

## MEMORANDUM AND ORDER

SAND, District Judge.

This case is brought by 435 non-smoking inmates who claim that they have been unlawfully exposed to excessive quantities of environmental tobacco smoke ("ETS"), also known as second-hand smoke. The Defendants are tobacco manufacturers and their trade associations ("private party defendants"), as well as Kathleen Hawk, the Director of the Federal Bureau of Prisons ("BOP"). Presently before the Court are the Defendants' motions to dismiss the Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6), on the ground that it fails to state a claim upon which relief may be granted. For the reasons set forth below, the motions are granted and the Complaint is dismissed.

### I.

■ The Eighth Amendment proscribes cruel and unusual punishment, which includes actions taken with deliberate indifference to the serious medical needs of a prisoner. *See Estelle v. Gamble*, 429 U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251

(1976); *Koehl v. Dalsheim,* 85 F.3d 86, 88 (2d Cir.1996). In *Helling v. McKinney,* 509 U.S. 25, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993), the Supreme Court held that it would violate the Eighth Amendment to expose an inmate "to levels of ETS that pose an unreasonable risk of serious damage to his future health," if done with deliberate indifference to that risk. *Id.* at 35, 113 S.Ct. 2475. Several courts have subsequently reviewed allegations brought by prisoners claiming that their Eighth Amendment rights have been violated due to excessive exposure to second-hand smoke. *See, e.g., Henderson v. Sheahan,* 196 F.3d 839 (7th Cir.1999); *Warren v. Keane,* 196 F.3d 330 (2d Cir.1999); *Scott v. District of Columbia,* 139 F.3d 940 (D.C.Cir.1998); *Navarrete v. Metro. Detention Ctr.,* No. 97 CV 4071, 1999 WL 294785 (E.D.N.Y. Mar.19, 1999); *Bieregu v. Reno,* Civ. A. No. 93–4894(JEI), 1994 WL 530665 (D.N.J. Sept.23, 1994). Principles governing the resolution of such claims are therefore relatively familiar and well settled.

The novelty of this case lies in that the Plaintiffs' principal targets are the manufacturers of tobacco products rather than prison officials or prison policies.[1] In *Henderson, Warren,* and *Scott,* for example, the plaintiffs challenged the adequacy of prison policies with respect to the housing of non-smoking inmates or alleged under-enforcement of what appeared to have been facially adequate policies. *See Henderson,* 196 F.3d at 842–43; *Warren,* 196 F.3d at 331–32; *Scott,* 139 F.3d at 943. By contrast, the Plaintiffs in this case do not address any particular BOP policy; nor do they challenge the enforcement of any policy. The Plaintiffs claim that the manufacturers of tobacco products sought to sell as many cigarettes as possible to the federal prison population, and that they conspired to do so with Director Hawk, with deliberate indifference to the associated health risks for non-smoking inmates. Although a numerical majority of the claims advanced in the Complaint[2] premise liability on theories of tort actionable under state law, the linchpin of the Complaint, and the thread by which its invocation of federal jurisdiction hangs, is the allegation that the private party defendants conspired with Director Hawk to violate the Eighth Amendment. For the reasons set forth below, we conclude that the Plaintiffs' conspiracy allegation is too conclusory and insubstantial to be sustainable. We therefore grant the Defendants' motions and dismiss the case.

## II.

This case began with a complaint filed on October 2, 1997. The original complaint was brought by seventeen of the Plaintiffs and named only the private party defendants as Defendants. It alleged numerous state law causes of action, and sought both monetary and injunctive relief. An amended complaint, which added dozens of additional plaintiffs, was filed in February, 1998.

The Defendants moved to dismiss the amended complaint in April, 1998, arguing that the Court lacked jurisdiction because the plaintiffs had alleged only state law

---

**1.** The Court is aware of only three prior cases in which an inmate brought suit against a manufacturer of tobacco products on the theory that his confinement exposed him to unreasonable quantities of second-hand smoke. *See Steading v. Thompson,* 941 F.2d 498 (7th Cir.1991); *Todd v. Brown & Williamson Tobacco Corp.,* 924 F.Supp. 59 (W.D.La.1996); *Hardin v. Brown & Williamson Tobacco Co.,* No. G87–503 CA1, 1988 WL 288976 (W.D.Mich. Dec.27, 1988). In all of those cases, two of which were decided prior to the Supreme Court's decision in *Helling,* the court dismissed § 1983 claims against private tobacco companies due to the plaintiffs' failure to establish state action. *See Steading,* 941 F.2d at 499 (citing *Rendell–Baker v. Kohn,* 457 U.S. 830, 840–41, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982)); *Todd,* 924 F.Supp. at 63 (citing *Nat'l Collegiate Athletic Ass'n v. Tarkanian,* 488 U.S. 179, 191, 109 S.Ct. 454, 102 L.Ed.2d 469 (1988)); *Hardin,* 1988 WL 288976, at *2.

**2.** We use the term "Complaint" to refer to the Second Amended Complaint.

causes of action and had failed to establish any basis for invoking the Court's diversity jurisdiction The plaintiffs responded by disclaiming any reliance on our diversity jurisdiction and by explaining that they believed federal jurisdiction existed because the federal prison system was a coconspirator with the private party defendants. The Court granted the Plaintiffs' application to amend the complaint and denied as moot the Defendants' motion to dismiss. *See Nwanze v. Philip Morris Companies, Inc.*, No. 97 Civ. 7344(LBS), 1999 WL 292597 (S.D.N.Y. May 10, 1999).[3]

The Second Amended Complaint ("Complaint") joined several more defendants, including the Director of the BOP, Kathleen Hawk. It alleges, in addition to the state law claims that had already been alleged, that Director Hawk conspired with the private party defendants to violate the Plaintiffs' Eighth Amendment rights. The Complaint seeks monetary damages, both compensatory and punitive and "any other relief that may be deemed just and fair." (Complaint at ¶ 200.)

The Defendants moved to dismiss the Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(1), on the ground that this Court lacked subject matter jurisdiction. After reviewing the conspiracy allegations, the Court denied the motion, explaining that "[t]hese allegations ... are more than sufficient to articulate a claim that invokes the Court's federal question jurisdiction." *See Nwanze v. Philip Morris, Inc.*, 1999 WL 292620, at *3 (citing *Helling v. McKinney*, 509 U.S. 25, 31–37,

113 S.Ct. 2475, 125 L.Ed.2d 22 (1993)). We noted, however, that our conclusion was not to "be seen as expressing any opinion as to the ultimate merits of Plaintiffs' claim," and that "a case that cannot survive a motion to dismiss for failure to state a claim upon which relief can be granted ... may nonetheless properly be in federal court." *See id.* (citing *Town of West Hartford v. Operation Rescue*, 915 F.2d 92, 99–100 (2d Cir.1990)). The Defendants have now filed Rule 12(b)(6) motions, which we grant in their entirety.

### III.

Because our review is pursuant to a motion to dismiss on the ground that the Complaint fails to state a claim upon which relief can be granted, we construe all factual allegations in the Plaintiffs' favor. *See Automated Salvage Transp., Inc. v. Wheelabrator Envtl. Sys., Inc.*, 155 F.3d 59, 67 (2d Cir.1998). "Dismissal of the complaint is proper only where 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (footnote omitted)) (citation omitted). We have given due regard to the Plaintiffs' *pro se* status and have not sought to impose upon them any technical or non-substantive requirement. A *pro se* complaint is held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

---

**3.** In the same Memorandum and Order, the Court denied Plaintiff's application to be certified as a class, principally because of the well established federal rule forbidding *pro se* plaintiffs from conducting class action litigation. *See id.* at *2 (citing *McShane v. United States*, 366 F.2d 286, 288 (9th Cir.1966); *McLeod v. Crosson*, No. 89 Civ.1952, 1989 WL 28416, at *1 (S.D.N.Y. Mar.21, 1989)). That denial was without prejudice to the application being renewed if counsel were appointed. Although we subsequently granted the Plaintiffs' application for appointment of counsel, *see Nwanze v. Philip Morris Inc.*, No. 97 Civ.

7344(LBS), 1999 WL 292620, at *5 (S.D.N.Y. May 10, 1999), neither this Court nor the Court's *Pro Se* office has been able to find an attorney who is acceptable to the Plaintiffs and who is willing to represent them. Since May, 1999, the *Pro Se* office has sent the file in this case out to six separate attorneys for their review, without any success in obtaining legal representation for the Plaintiffs. In some instances, potential counsel reported that they were unable to reach agreement with Mr. Nwanze as to the future conduct of the litigation.

■ Even with all factual allegations construed in Plaintiffs' favor, however, the Complaint fails to allege any facts which might support an inference that a conspiracy to violate the Constitution existed. Because of the relative ease with which conspiracy allegations may be brought, and the substantial disruption of governmental function that they can cause, federal courts require "more than conclusory allegations to avoid dismissal of a claim predicated on a conspiracy to deprive [the plaintiff] of his constitutional rights." *Polur v. Raffe,* 912 F.2d 52, 56 (2d Cir.1990) (citations omitted); *see Dwares v. City of New York,* 985 F.2d 94, 100 (2d Cir.1993) ("[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed."); *San Filippo v. U.S. Trust Co. of New York, Inc.,* 737 F.2d 246, 256 (2d Cir.1984) (affirming dismissal of conclusory conspiracy allegations). To proceed with a conspiracy allegation, the plaintiff "must plead facts that show an agreement or some form of joint or concerted action." *Berman v. Turecki,* 885 F.Supp. 528, 534 (S.D.N.Y.1995) (citation omitted). "[W]hile a plaintiff should not plead mere evidence, he should make an effort to provide some 'details of time and place and the alleged effect of the conspiracy.'" *Dwares,* 985 F.2d at 100 (quoting 2A *Moore's Federal Practice* ¶ 8.17[6], at 8–109 to 8–110 (2d ed.1992)).

■ The Complaint alleges, with great specificity, long-standing, concerted efforts within the tobacco industry to conceal the medical harms associated with tobacco smoke from the public and to enhance the addictiveness of tobacco products. With respect to Director Hawk's involvement, however, the conspiracy allegations are exceedingly scant. The Complaint charges a conspiracy to violate the Eighth Amend-

ment, but makes no specific factual allegations whatsoever as to any agreement or joint effort that might have constituted the conspiracy. We are told that the BOP distributes tobacco products to inmates free of charge. We are also told that the BOP profits from the sale of tobacco products to inmates, because of the monopolistic control over such sales that it enjoys. The Complaint alleges that the BOP purchased tobacco products with inmate funds and that it distributes and sells those products in deliberate disregard of known health risks. But nowhere does the Complaint identify an agreement or concerted action between Director Hawk and the private party defendants to expose nonsmoking inmates to unacceptable levels of ETS. The only agreements alleged to have been made between the BOP and the private party defendants are contracts for the sale of tobacco products and an agreement that the private party defendants would bank-roll any legal proceedings involving the availability of tobacco products in federal prisons. Even construing all factual allegations in the Plaintiffs' favor, such agreements would not amount to a conspiracy to violate the Eighth Amendment. The Complaint's conspiracy allegations are vague, general, and conclusory and must be dismissed.

## IV.

The existence of federal jurisdiction in this case is premised upon the aforementioned claim of an Eighth Amendment violation.[4] *See Nwanze,* 1999 WL 292620, at *2–4. We exercise jurisdiction over that claim pursuant to 28 U.S.C. § 1331 and exercise supplemental jurisdiction over the Plaintiffs' pendent state law claims pursuant to 28 U.S.C. § 1367(a). Without a valid allegation of a conspiracy, however, the Plaintiffs' Eighth Amendment claim collapses completely.

---

4. Plaintiffs have not sought to invoke federal jurisdiction based on a federal tort theory, nor have they complied with the procedural prerequisites for asserting such a claim. *See*

Federal Tort Claims Act, 28 U.S.C. § 2675(a) (1998); *McNeil v. United States,* 508 U.S. 106, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993).

## A. The Claim Against Director Hawk

Federal agents, such as Director Hawk, can be sued in either their official capacity, or in their individual capacity. The Complaint does not specify the capacity in which Hawk is named as a Defendant,[5] but the Court lacks jurisdiction over Plaintiffs' Eighth Amendment claim against Director Hawk regardless of the capacity in which she is sued.

■ A *Bivens* claim may not be brought against an agency of the United States. *See FDIC v. Meyer*, 510 U.S. 471, 483–86, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994). Because any claim against Director Hawk in her official capacity is the equivalent of a claim against a United States agency, *see Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir.1994) (citing *Meyer*, 510 U.S. at 484–86, 114 S.Ct. 996; *Kentucky v. Graham*, 473 U.S. 159, 166–67, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)), the Plaintiffs' *Bivens* claim against Director Hawk in her official capacity must be dismissed.

■ If Director Hawk is named in her individual capacity, she must be subject to the personal jurisdiction of this Court. Under New York law, which governs here, *see Robinson*, 21 F.3d at 510 (citations omitted), the Court would have personal jurisdiction over a non-domiciliary like Director Hawk only if the injuries of which Plaintiffs complain are substantially related to business that she transacted in New York or were caused by tortious acts she committed in New York. *See* N.Y. CPLR § 302(a)(1)-(2); *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467, 527 N.Y.S.2d 195, 522 N.E.2d 40 (N.Y.1988) (citations omitted); *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1109 (2d Cir.1997) (citations omitted). Other than the improperly pleaded conspiracy allegation, however, the Complaint fails to allege any facts which might establish that Director Hawk either committed tortious acts in New York, or that the injuries of which Plaintiffs complain were related to business she transacted in New York. Mere supervision over the Bureau of Prisons, the reach of which extends into every state, is insufficient to establish a basis for the exercise of personal jurisdiction. *See Lee v. Carlson*, 645 F.Supp. 1430, 1434 (S.D.N.Y.1986), *aff'd*, 812 F.2d 712 (1987); *cf. Green v. McCall*, 710 F.2d 29, 33–34 (2d Cir.1983) (members of U.S. Parole Commission); *Kronisch v. United States*, 83 Civ. 2458(KMW), 1997 WL 907994, at *18 (S.D.N.Y. April 14, 1997) (CIA Director), *aff'd in part, rev'd in part on other grounds*, 150 F.3d 112 (2d Cir.1998).

## B. The Claim Against the Private Party Defendants

■ The dismissal of Plaintiffs' conspiracy allegation also undermines their Eighth Amendment claim against the private party defendants. As a general rule, only governmental actors may be held responsible for constitutional violations. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978) ("[M]ost rights secured by the Constitution are protected only against infringement by governments."); *Leeds v. Meltz*, 85 F.3d 51, 54 (2d Cir.1996). If the governmental actors in question are agents of a state, redress may be sought through a federal court action, pursuant to 42 U.S.C. § 1983. An individual claiming a constitutional violation by federal officials may bring a federal court action notwithstanding the lack of a similar, authorizing statute. *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Courts generally treat *Bivens* actions and § 1983 actions as analogous for most purposes, and frequently treat rules of decision in one context as binding in the other. *See Tavarez v. Reno*, 54 F.3d 109, 110 (2d Cir.1995) (citing *Carlson v. Green*, 446 U.S. 14, 18–20, 100 S.Ct. 1468, 64 L.Ed.2d

**5.** Plaintiffs assert in their opposition to Director Hawk's motion to dismiss that she is sued in her individual capacity. (*See* Plaintiffs' Opposition at 2.)

15 (1980); *Ayeni v. Mottola*, 35 F.3d 680, 688 n. 10 (2d Cir.1994); *Ellis v. Blum*, 643 F.2d 68, 84 (2d Cir.1981)).

Private entities that act in concert with state actors may be sued pursuant to § 1983 upon an allegation that the joint activity caused a violation of a constitutional right. *See Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 936, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). But whether a similar allegation involving federal officials would give rise to a *Bivens* action is the subject of a significant controversy among federal courts. *See Hammons v. Norfolk Southern Corp.*, 156 F.3d 701, 705–08 (6th Cir.1998) (holding that a *Bivens* action may be brought against a private, non-individual corporation); *Kauffman v. Anglo–American Sch.*, 28 F.3d 1223, 1225–31 (D.C.Cir.1994) (holding that a *Bivens* action may not be brought against a private, non-individual entity); *Heinrich ex rel. Heinrich v. Sweet*, 62 F.Supp.2d 282, 306–08 (D.Mass.1999) (reviewing arguments of *Hammons* and *Kauffman* courts and siding with *Hammons* ).[6] Even if we were to resolve that controversy in Plaintiffs' favor, a possibility that is by no means certain, the lack of an adequately pleaded allegation of joint or concerted action on behalf of the private party defendants and a federal agent renders a *Bivens* claim inappropriate. There is, therefore, no basis for an Eighth Amendment claim against the private party defendants.

## C. Supplemental Jurisdiction

■ Although federal courts have the authority to exercise jurisdiction over supplemental state law claims after the dismissal of all federal claims, we also have the authority to decline to exercise such jurisdiction. *See* 28 U.S.C.A. § 1367(c)(3) (West 2000).

> If the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well. *Castellano v. Bd. of Trustees*, 937 F.2d 752, 758 (2d Cir.1991). If, however, the dismissal of the federal claim occurs 'late in the action, after there has been substantial expenditure in time, effort, and money in preparing the dependent claims, knocking them down with a belated rejection of supplementary jurisdiction may not be fair. Nor is it by any means necessary.' 28 U.S.C.A. § 1367, Practice Commentary (1993) at 835.

*Purgess v. Sharrock*, 33 F.3d 134, 138 (2d Cir.1994); *see also Viacom Int'l, Inc. v. Kearney*, 212 F.3d 721, 726 (2d Cir.2000) (explaining that whether to exercise supplemental jurisdiction is discretionary with district courts) (citing *Purgess*, 33 F.3d at 138).

Although this case has now been open and pending in this Court for nearly three years, the litigation is not in an advanced stage. No discovery has occurred. The majority of the time for which this action has been pending has been spent exhausting all reasonable efforts to find *pro bono* counsel that would be acceptable to the Plaintiffs. In these circumstances, we see no hardship in declining to exercise supplemental jurisdiction over Plaintiffs' state law claims. *See Philan Ins. Ltd. v. Frank B. Hall & Co., Inc.*, 786 F.Supp. 345, 347 (S.D.N.Y.1992) ("Even if the Court lacks an independent basis of jurisdiction over the state claims, it may exercise [supplemental] jurisdiction over those claims if substantial resources have already been

---

6. The split reflected in the *Hammons* and *Kauffman* cases relates only to the question, which is relevant here, of whether a *Bivens* suit may be brought against private, non-individual entities, and was engendered by the decision in *FDIC v. Meyer*, 510 U.S. 471, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994), barring *Bivens* actions against federal, non-individual entities. Federal courts are similarly split, however, as to whether a *Bivens* action may be brought against private, individual entities. *See Heinrich*, 62 F.Supp.2d at 306–07 (reviewing different positions of circuit courts on this issue).

expended in the action.") (citing *Ener-comp, Inc. v. McCorhill Publishing,* 873 F.2d 536, 545–46 (2d Cir.1989); *Philatelic Found. v. Kaplan,* 647 F.Supp. 1344, 1348 (S.D.N.Y.1986)).

### CONCLUSION

Plaintiffs have presented a compelling portrait that the federal prisons in which they are confined are permeated with tobacco smoke. This Court, however, is one of limited jurisdiction. Plaintiffs have disclaimed diversity jurisdiction and have not alleged a viable federal cause of action. The Second Amended Complaint is dismissed without prejudice. Because the Complaint's defects relate to the basic facts at issue rather than technical flaws that could be cured by re-pleading, leave to amend the Complaint is denied.

The Clerk of the Court is directed to close this case. All other pending motions, such as a May 31, 2000 discovery motion filed by Plaintiff Derrick Redd, are denied as moot.

SO ORDERED.