Toby COHEN, Plaintiff–Appellant,

v.

**EMPIRE BLUE CROSS AND BLUE SHIELD, Defendant–Appellee.**

**Docket No. 97–7005.**

United States Court of Appeals,
Second Circuit.

Argued Dec. 9, 1998.

Decided April 28, 1999.

Lori B. Leskin, New York, New York (John J.P. Howley, Kaye, Scholer, Fierman, Hays & Handler, New York, New York, on the brief), for Plaintiff–Appellant.

Jeffrey D. Chansler, New York, New York (Richard Juzumas, New York, New York, on the brief), for Defendant–Appellee.

Lorraine S. Novinski, Assistant United States Attorney, New York, New York (Mary Jo White, United States Attorney

for the Southern District of New York, Gideon A. Schor, Assistant United States Attorney, New York, New York, on the brief), for Amicus Curiae United States in support of Appellee.

Before: KEARSE, WALKER, and STRAUB, Circuit Judges.

KEARSE, Circuit Judge:

Plaintiff Toby Cohen appeals from a judgment entered in the United States District Court for the Southern District of New York, Allen G. Schwartz, *Judge,* dismissing her complaint alleging that defendant Empire Blue Cross and Blue Shield ("Empire") failed, in its capacity as a fiscal intermediary for Medicare, to pay Cohen's Medicare claims, and that Empire failed to process claims properly in its capacity as her private insurer. The district court granted Empire's motion to dismiss the complaint on grounds of immunity, lack of subject matter jurisdiction, and failure to state a claim on which relief can be granted. On appeal, Cohen contends that the district court erred in dismissing with prejudice her claims against Empire as a private insurer. Empire contends, *inter alia,* that the appeal must be dismissed for lack of appellate jurisdiction because the notice of appeal filed by Cohen, proceeding *pro se* in the district court, was filed some 57 days after the entry of judgment. Cohen argues that her notice of appeal was timely because the United States is a party to this action. The United States, as *amicus curiae,* urges dismissal on the ground that it is not a party. For the reasons that follow, we conclude that the United States is not and was not a party to the action, and that the appeal must be dismissed.

## I. BACKGROUND

Cohen commenced the present action *pro se* in New York City Civil Court in December 1993, using a form provided by that court to describe her claim. Her claim, which named Empire as the only defendant, alleged

> [f]ailure to provide proper services, failure to pay for insurance claim, breach of contract. Blue Cross refuses to reimburse any Medicare claims because it is under the erroneous impression that I have another policy....

Empire promptly removed the case to the district court, invoking 28 U.S.C. § 1441(b) on the ground that the complaint related to the federal Medicare program, that Empire processed claims under that program as an agent of the United States pursuant to a contract entered into with the Department of Health and Human Services ("HHS") in accordance with the Medicare statute, and that the matter thus arose under federal law.

### A. *Proceedings in the District Court*

Cohen's original complaint asserted that Empire, as fiscal intermediary for Medicare, was refusing to process or pay her Medicare claims. The provenance of her assertions was that prior to April 1993, Empire also had provided private health insurance coverage to Cohen; that because the premium due in April 1993 was not paid, Empire canceled the policy; and that the cancellation, retroactive to April 1993, apparently took place in August 1993. In the meantime, from April 1993 until December 1993, Empire as Medicare intermediary denied Cohen's Medicare claims on the basis that she still had primary private insurance coverage. (*See* Letter from plaintiff to district court dated January 22, 1996, at 5 ("The private branch of Blue Cross knew that I had Medicare.... It also knew that Medicare would not pay any of my claims until it was notified that my private policy was canceled, and that Medicare was now my primary insurer, and hence the one responsible for 80 percent of my medical bills. I assumed—given such knowledge—that the private branch of Blue Cross would have informed the Medicare branch that it had canceled my private plan. But apparently it felt under no such obligation.... I and the

physicians and hospitals treating me then spent the next eight months writing to the Medicare branch of Blue Cross telling it that the private branch of Blue Cross had canceled the policy . . . .").)

Soon after removal of the case to federal court, Cohen's Medicare claims were resolved. In January 1994, Assistant United States Attorney ("AUSA") Lorraine S. Novinski, representing Donna E. Shalala, Secretary of HHS ("the Secretary" or "the government"), wrote the district judge to whom the case was first assigned, requesting that Empire be given an extension of its time to answer or move with respect to the complaint, in anticipation that those claims might be resolved:

> I have been advised that Blue Cross is reviewing its actions on plaintiff's Medicare claims, but I do not yet know the results of that review. Of course, if the review results in a decision to pay the claims, no litigation would be necessary.

(Letter from AUSA to district court dated January 25, 1994, at 1.) The AUSA also indicated that since the Secretary is responsible for Medicare and "is the real party in interest in any litigation involving administration of the program," if continued litigation of the Medicare claims were necessary the AUSA would "move to intervene on behalf of the Secretary." (*Id.*)

In a February 9, 1994 status conference with the court, attended by the parties and the government, it transpired that Cohen's Medicare claims would be paid, but that those payments would not end the litigation:

> THE COURT: . . . . As I understand the plaintiff's complaint to me, she incurred some medical expenses, she understands that her Blue Cross policy was not in effect at the time these expenses were incurred, and that she then sought Medica[re] coverage, that Medicare keeps telling her, your primary carrier has to pay its part first, so she is going around in a circle, where no one is attempting to identify where that circle stops.

Can you two sort this out for her in an expeditious manner? . . . .

> MS. NOVINSKI [AUSA]: I believe it's been done. They are reprocessing all the Part A and Part B claims. I think one has been paid. The rest are in process or being processed. It's my understanding they have resolved the problem. They have currently resolved all the claims. The computer now recognizes she is insured by Medicare and by nobody else, and some of the earlier claims have been reprocessed, others are now being reprocessed.

> THE COURT: Well, Ms. Cohen, does that answer your problem, or what remains then of this case?

> MS. COHEN: Well, the only thing, your Honor, is this is the second time this has happened. I brought with me court papers that I filed in 1986 when I had this problem with Empire Blue Cross, and it took a year before that SNAFU was unraveled. I have been hounded by collection agencies. It's disrupted my relationship with doctors. People like to get paid for their services, and I would ask this court to award me punitive and compensatory damages.

(Hearing Transcript, February 9, 1994 ("Feb. 1994 Tr."), at 2–3.) In response to Cohen's request for damages, the AUSA stated that

> [u]nder the statute she would have no right to any sort of damages under Medicare. Medicare is a federally established program, the Secretary has a sovereign immunity defense. There is no statutory grant of damages for any problems here.

> Now, Empire is a private corporation, something that I can't speak to, so I don't know what sort of remedy she could have against them.

(*Id.* 4–5.) Cohen responded, in part, "My problem is not with the government but rather with the way in which Empire Blue Cross goes about processing claims." (*Id.* 5.)

At the next court conference, which Cohen did not attend, the AUSA informed the court that the Medicare claims had been resolved and that the government therefore would not move to intervene:

MS. NOVINSKI: .... We had intended to move to dismiss the action, move to intervene the secretary as the defendant and then dismiss the action. That was all on the understanding that what she was suing about was the failure to pay properly on her Medicare claims.

I believe those claims have all been resolved. In fact, there is no issue regarding the amount of money she is owed under Medicare.

THE COURT: But she wouldn't drop you from the suit, is that it?

MS. NOVINSKI: Originally the suit was brought against Empire. Then it was removed here with the expectation that the secretary of Health and Human Services would intervene as defendant. That was on the understanding she was suing on her Medicare claims.

At the last conference, as I recall, she conceded that the Medicare problem had been resolved but she was still unhappy with the fact that Blue Cross had in her view mishandled her Medicare claims and in fact had a history of prior difficulties with Blue Cross. And at that point it looked as if she was interested in suing Blue Cross for their actions that they took as opposed to suing them for more money on Medicare claims.

. . . .

MS. NOVINSKI: The original problem was with her [Medicare] enrollment, which has been corrected.

(Hearing Transcript, September 8, 1994, at 3–4.) At the following conference, Cohen confirmed that her Medicare claims had in fact been resolved. (Hearing Transcript, October 28, 1994, at 6 ("MS. COHEN: That [dispute as to the nonpayment of the Medicare claims] has been resolved.").)

Cohen wished to proceed, however, on her request for damages. Efforts at mediation of that claim failed, and the district court eventually permitted Empire to move against the complaint. Empire moved to dismiss, arguing that it was entitled to judgment as a matter of law on various grounds. To the extent that Cohen sued Empire as a Medicare fiscal intermediary, Empire contended that it enjoyed sovereign and official immunity as an agent of the government, and that, in any event, by the time of the February 1994 court conference Cohen's Medicare claims had been reprocessed and she had received all of the Medicare benefits to which she was entitled. To the extent that Cohen asserted claims against Empire as a private insurance carrier, Empire contended that the court lacked subject matter jurisdiction because there was no federal question and no diversity of citizenship, and that the complaint failed to state a cause of action with respect to the alleged mishandling of Cohen's policy.

The motion was heard in August 1996 by Judge Schwartz, to whom the case had been reassigned. In a decision from the bench, the court granted Empire's motion. The court ruled that Empire had sovereign immunity with respect to Cohen's request for damages for the erroneous processing of her Medicare claims. The court reasoned that the real party in interest was the Secretary, who, if sued directly would have sovereign immunity because Congress has not authorized a suit for damages for a wrongful denial or delay of Medicare reimbursement. The court also ruled that Empire had official immunity from a suit on such claims. As to claims by Cohen against Empire as private insurer, the court found no federal cause of action and no diversity of citizenship, and hence no subject matter jurisdiction; however, apparently exercising supplemental jurisdiction over those claims, the court also ruled that Cohen failed to state any cognizable cause of action:

Although plaintiff has been put through a difficult experience and no doubt has sustained a fair amount of anguish and discomfort, her complaint fails to state a cause of action.

The Court would have to conclude that Empire is liable to her because it did not notify Medicare that her private insurance coverage had lapsed. Yet there is no obligation in the law for Empire to do so. In fact, as Empire argues, a private insurer is not free to exchange information with Empire in its role as Medicare intermediary and carrier. The provisions of the Privacy Act, 5 U.S.C. § 552(a), embrace Medicare contractors and require scrupulous separation of private business from Medicare operations.

In addition, even if such an obligation existed, plaintiff has failed to establish that she suffered any damages from Empire's failure to perform the acts that she alleged. Plaintiff has on the record failed to identify any monetary damages to which she would be entitled and has failed to state any other claim cognizable under the law.

(Hearing Transcript, August 22, 1996 ("Aug. 1996 Tr."), at 40–41.)

B. *The Initial Appeals*

Judgment dismissing the action was entered on October 1, 1996. On November 27, 1996, *i.e.*, 57 days later, Cohen filed her notice of appeal. As there was no indication in the case caption or in the district court docket entries that the United States or any of its officers or agencies was a party to the action, this Court dismissed the appeal *sua sponte* because the notice of appeal had not been filed within the 30–day period allowed by Fed. R.App. P. 4(a)(1). *See Cohen v. Empire Blue Cross Blue Shield*, No. 97–7005 (2d Cir. Apr.30, 1997) ("*Cohen I*").

In the meantime, on or about December 17, 1996, Cohen had submitted to the district court a motion to extend her time to appeal. The district court denied that mo-tion, stating, *inter alia*, that "[t]he United States was never a party to this action." Order endorsed, filed December 23, 1996. On appeal from that denial (No. 97–7144), we vacated the district court's decision on the ground that that court lacked jurisdiction over the motion. *See Cohen v. Empire Blue Cross Blue Shield*, 142 F.3d 116, 118–19 (2d Cir.1998) (per curiam) ("*Cohen II* "). We stated that since the motion for an extension of time to appeal was submitted more than 60 days after entry of judgment, the court had no power to grant the motion if the notice of appeal should have been filed within 30 days, *see id.* at 118; Fed. R.App. P. 4(a)(5) (district court may, upon a proper showing, extend the time for filing a notice of appeal if the motion for an extension is "filed not later than 30 days after the expiration of the time prescribed by" Rule 4(a)(1)). On the other hand, we stated, if the Rule gave Cohen 60 days to file her notice of appeal, *see* Fed. R.App. P. 4(a)(1) (parties have 60 days from entry of judgment to file notice of appeal if United States or any of its officers or agencies is a party), her extension motion would have been moot because her original appeal would have been timely. *Cohen II*, 142 F.3d at 118. However, we had dismissed Cohen's original appeal on the premise that the United States was not a party, and we noted that it was perhaps arguable that if, as the district court ruled, Empire was entitled to sovereign immunity, Empire might be considered a government agency within the meaning of Fed. R.App. P. 4(a)(1). Accordingly, simultaneously with our decision in *Cohen II*, we entered a new order in No. 97–7005 recalling the mandate *sua sponte*, ordering that counsel be appointed for Cohen, and directing that counsel brief not only the merits but also the matter of appellate jurisdiction. *See Cohen v. Empire Blue Cross Blue Shield*, No. 97–7005 (2d Cir. Apr.15, 1998) ("*Cohen III* ").

## II. DISCUSSION

In her briefs on appeal, Cohen contends (1) that her notice of appeal was timely

because (a) the United States was a party to the action, or (b) Empire in its capacity as a fiscal intermediary for Medicare is an "agent" of the United States; or (2) that her motion for an extension of time to appeal should have been granted by the district court. As to the merits, Cohen contends that the district court erred by not addressing her claims against Empire as a private insurer. For the reasons that follow, we reject Cohen's contentions that her appeal is timely, and hence we conclude that we lack jurisdiction over the appeal. While we do not reach the merits, given our conclusion as to appellate jurisdiction, we note that Cohen's contention that the district court did not address the merits of her claims against Empire as a private insurer is belied by the record (*see, e.g.,* Aug. 1996 Tr. 40–41, quoted in Part I.A. above).

## A. *United States as a Party*

A notice of appeal in a civil case to which the United States is not a party must be filed within 30 days of entry of the judgment from which appeal is taken. *See* Fed. R.App. P. 4(a)(1). "[B]ut if the United States or an officer or agency thereof is a party, the notice of appeal may be filed by any party within 60 days after such entry." *Id.* The rationale for this distinction is that "the government often needs more than 30 days in which to decide whether to appeal, because several departments may be involved in the decision." *Rochester Methodist Hospital v. Travelers Insurance Co.,* 728 F.2d 1006, 1011 (8th Cir.1984); *see Hare v. Hurwitz,* 248 F.2d 458, 461–62 (2d Cir.1957) (discussing Fed. R.Civ.P. 73, the predecessor to Fed. R.App. P. 4). In order to avoid giving one party more time than others to take the same procedural step, when the United States is a party any party may file a notice of appeal within 60 days. *See id.* at 462.

The filing deadlines set by Rule 4(a) are "mandatory and jurisdictional." *Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56, 61, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982) (per curiam) (internal quotation marks omitted). Thus if a notice of appeal is filed beyond the period allowed by that Rule, the court of appeals lacks subject matter jurisdiction to hear the appeal. *See, e.g., Browder v. Director, Department of Corrections,* 434 U.S. 257, 264, 98 S.Ct. 556, 54 L.Ed.2d 521 (1978); *Endicott Johnson Corp. v. Liberty Mutual Insurance Co.,* 116 F.3d 53, 56 (2d Cir. 1997). Because of the jurisdictional rigidity of the appeal deadlines, we and other courts have concluded that a bright-line test as to the presence of the United States as a "party" is warranted. Thus, we need not determine whether the United States has an interest in the appeal; the 60–day deadline is applicable if the United States was a party to the action at any stage of the litigation. *See, e.g., United States v. American Society of Composers, Authors and Publishers,* 331 F.2d 117, 119 (2d Cir.) (discussing predecessor to Rule 4) ("[t]he stated criterion is whether the United States is a party to the action ... and not whether the United States is concerned with the particular order sought to be appealed"), *cert. denied,* 377 U.S. 997, 84 S.Ct. 1917, 12 L.Ed.2d 1048 (1964); *Rochester Methodist Hospital v. Travelers Insurance Co.,* 728 F.2d at 1011–12 ("HHS was named in the original complaint, was a party at trial, and took an active role in the suit until [the claim against it was transferred to the Court of Claims and] its motion for intervention was denied.... While HHS was not a named defendant at the time judgment was entered, Rule 4(a) does not require that the government be a party at the time of the judgment for the 60–day rule to apply."); *In re Paris Air Crash of March 3, 1974,* 578 F.2d 264, 265 (9th Cir.1978) (per curiam) ("when the United States is a named party, participates in the general action and is, or may be, interested in the outcome of an appeal, even though it is not a party to the appeal, it is a 'party' for purposes of F.R.A.P. 4(a)").

■ In the present action, Cohen argues that the government was a party because it requested more time for Empire to answer or move with respect to the complaint, represented that the government was the real party in interest, drafted an order-to-show-cause pursuant to the request of the court, gave Cohen notice of certain proceedings at the behest of the court, and attended and participated in the pretrial conferences. (*See, e.g.*, plaintiff's main brief on appeal at 10 ("Government appeared in this action, made motions in this action, was granted relief by the district court, and was treated as a party to this action in every respect."); *see also id.* at 9 (stating that plaintiff waited 50–odd days after entry of judgment to file her notice of appeal "believing that the United States was a party to the action").)

The record, however, shows that the government was not a party. Cohen's complaint did not name the United States, HHS, or the Secretary as a defendant; it named only Empire. Shortly after the case was removed from state court, the AUSA informed the district court that if Cohen's Medicare claims were not promptly resolved, the government would seek to intervene; intervention of course would not have been necessary had the government already been a party. Nor was the government thereafter added as a party. When Cohen's Medicare claims were quickly resolved, the government informed the court that it would not move to intervene. And, as Cohen acknowledges in her main brief on this appeal, the government never did move to intervene.

Further, while Cohen asserts that "it is undisputed that the Government—not Empire—controlled every aspect of the defense of this action" (plaintiff's main brief on appeal at 11), that contention is disputed and the record does not support it. What is undisputed is that the government instructed Empire to remove the case from state court to federal court. And it is clear that the government asked the district court to give Empire an extension of

time to respond to the complaint. But both acts were designed to give the government an opportunity to become a party to the action by moving to intervene, if necessary, with respect to Cohen's Medicare claims. Although the government stated that it was the real party in interest with respect to the Medicare claims, it noted its own immunity against any claim for damages, and it expressly disclaimed any interest in her damages claims against Empire. (*See, e.g.*, Feb. 1994 Tr. 4–5 (AUSA: "Empire is a private corporation, something that I can't speak to, so I don't know what sort of remedy she could have against them.").)

It is true, as Cohen argues, that "the U.S. Attorney appeared on behalf of the Government at every court conference and oral argument in the district court." (Plaintiff's main brief on appeal at 11.) But the government was present as an *amicus curiae*. An *amicus curiae* is not a party, and nothing has been called to our attention to suggest that the government ever referred to itself as a party in any of its communications with the parties or the court. For example, in supporting Empire's motion to dismiss, the government filed papers identifying itself as *amicus curiae*. The district court, in opening the hearing on the motion to dismiss, noted the materials it had received on the motion, including "from the government its memorandum of *amicus curiae* on behalf of the Secretary of Health and Human Services." (Aug. 1996 Tr. 2.) And Cohen herself, in a May 16, 1996 letter to the court requesting an extension of time to respond to Empire's motion, indicated that she sent copies to the attorney for "Defendant Blue Cross" and to "Lorraine Novinski, Esq. Attorney for *amicus* Donna E. Shalala." (Letter from plaintiff to district court dated May 16, 1996, at 2–3.)

We conclude that the government was not at any time a party to the action.

B. *Empire as an "Agent" of the Government*

■ The 60–day deadline for filing a notice of appeal is also applicable where

any of the parties is an "agency" of the United States. Fed. R.App. P. 4(a)(1). Cohen seeks to invoke this provision on the ground that Empire, as an intermediary for the Secretary in the handling of Medicare claims, is a government "agent." We agree that it may be an agent, but not that it is an "agency" within the meaning of Rule 4.

The term "agency" is not defined in the Federal Rules of Appellate Procedure. Those Rules are, however, promulgated under the authority of 28 U.S.C. § 2072, see Fed. R.App. P. 1 Advisory Committee Note (1967); and 28 U.S.C. § 451 provides the definitions for Title 28. Section 451 states that, "as used in this title,"

> [t]he term "agency" includes any department, independent establishment, commission, administration, authority, board or bureau of the United States or any corporation in which the United States has a proprietary interest, unless the context shows that such term was intended to be used in a more limited sense.

28 U.S.C. § 451. We agree with the Seventh Circuit's view that

> [b]ecause the Rules of Appellate Procedure address questions of jurisdiction and judicial administration closely related to the subject of Title 28, this definition is equally applicable to the Rules.... Nothing in Rule 4 suggests a special understanding of "agency" or implies that the statutory definition is unsuitable. Jurisdictional rules should be as clear and mechanical as possible. "The time of appealability, having jurisdictional consequences, should above all be clear." *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 202, 108 S.Ct. 1717, 100 L.Ed.2d 178 (1988) ....

*Helm v. Resolution Trust Corp.*, 18 F.3d 446, 447 (7th Cir.1994) (per curiam).

Empire does not fit within § 451's definition of "agency." It is a private not-for-profit corporation established under the laws of the State of New York. It is not funded by the United States, and the United States has no proprietary interest in its operations. Though Empire is under contract with HHS to perform certain services for HHS, and as such it may act as an agent of the government, it is not an institutional arm of the government such as a department, commission, board, or bureau. Further, the government has advised us in its *amicus* brief on this appeal that, though it endorses the view that a fiscal intermediary is entitled to official immunity, it no longer takes the position that such an intermediary is entitled to sovereign immunity.

Nor is the rationale for according government agencies 60 days in which to appeal, *i.e.*, to allow the various government officials and departments involved adequate time to decide whether to appeal, applicable to Empire. Had a judgment been entered against Empire, Empire would not have needed government permission in order to appeal. We see no basis on which to treat Empire as an agency of the United States within the meaning of Fed. R.App. P. 4(a)(1).

Having concluded that neither the United States nor any of its officers or agencies was a party to the appeal, we conclude that Cohen's time to appeal expired 30 days after the October 1, 1996 entry of judgment, *i.e.*, on October 31. Since her notice of appeal was not filed until November 27, it was untimely.

## C. The Request for an Extension of Time To Appeal

■ Finally, Cohen's contention that, if she had only 30 days in which to file a notice of appeal, the district court should have granted her motion for an extension of the time to appeal is meritless. Cohen separately appealed from the denial of that motion, and that contention was rejected in *Cohen II*, 142 F.3d at 118–19. Although Fed. R.App. P. 4(a)(5) allows the district court, upon a showing of excusable neglect or good cause, to extend the time for filing a notice of appeal, the court lacks jurisdiction to grant such a motion if the motion is

not filed within 30 days after expiration of the original time to appeal. *See, e.g., Endicott Johnson Corp. v. Liberty Mutual Insurance Co.*, 116 F.3d at 56; *Melton v. Frank*, 891 F.2d 1054, 1056 (2d Cir.1989).

In the present case, judgment had been entered on October 1, 1996. Thus, the 30–day period for Cohen's appeal expired on October 31; the 30–day additional period in which the Rules permitted a motion for an extension of her time to appeal expired on November 30. In *Cohen II*, we noted that Cohen's motion for an extension of her time to appeal was not filed until December 17, and we stated that "if ... Cohen had only 30 days to file her notice of appeal, her December 17 motion for an extension was filed outside of the 30–day grace period, and the district court lacked jurisdiction to [decide it] on the merits and should have dismissed it for lack of jurisdiction." 142 F.3d at 118; *see also id.* at 119 (vacating the order that denied the motion on its merits, and instructing the district court to dismiss the motion).

## CONCLUSION

We have considered all of Cohen's arguments in support of appealability and have found them to be without merit. The appeal is dismissed for lack of appellate jurisdiction.