229 F.3d 374 (2nd Cir. 2000)
 JOHN E. MALESKO, Plaintiff-Appellant,
v.
CORRECTIONAL SERVICES CORPORATION, formerly known as Esmor Correctional Services Inc. and "JOHN DOES #1 TO JOHN DOES #10," inclusive, the names of said John Doe Defendants are presently unknown but intended to indicate officers and managers and guards of the corporate defendant, Defendants-Appellees.
 Docket No. 99-7995
August Term, 1999
 UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
 Argued: April 19, 2000
Decided: October 06, 2000
 
 Appeal from a judgment of the United States District Court for the Southern District of New York (Martin, Judge). The district court dismissed Malesko's complaint against the Correctional Services Corporation ("CSC") on the grounds that: (1) Malesko could not assert against CSC, a private corporation acting on behalf of the federal government, the cause of action set forth in Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 397 (1971), which provides a damage remedy for violations of constitutional rights by federal agents, and (2) CSC could invoke government contractor immunity to such a claim in any event. The district court also dismissed Malesko's Bivens claims against an individual CSC employee as untimely and, for the same reason, denied Malesko's motion for leave to amend the complaint to substitute additional CSC employees for "DOE" defendants. We agree with the district court's decisions as to the individual defendants, but we find that the court erred in dismissing the complaint as to CSC.
 Affirmed in part; vacated and remanded in part.
 STEVEN PASTERNAK, Pasternak, Feldman & Plutnick, P.A., Livingston, NJ, for plaintiff-appellant.
 GEORGE P. STASIUK, Clifton Budd & DeMaria, LLP, New York, NY (George F. Brenlla, on the brief), for defendants-appellees.
 Before: POOLER and SOTOMAYOR, Circuit Judges.*
 SOTOMAYOR, Circuit Judge:
 
 
 1
 Plaintiff-appellant John E. Malesko appeals from the July 28, 1999 judgment of the United States District Court for the Southern District of New York (Martin, Judge) dismissing his complaint against defendant-appellee Correctional Services Corporation ("CSC") and a specifically named CSC employee, and denying him leave to file a second amended complaint. For the reasons that follow, we vacate the district court's dismissal of the claims against CSC. We affirm, however, the district court's dismissal of Malesko's claim against the individual CSC employee as time-barred and the denial of leave to file the second amended complaint on the same ground.
 
 BACKGROUND
 
 2
 On December 3, 1992, following his conviction for federal securities fraud, Malesko was sentenced to eighteen months imprisonment under the supervision of the Federal Bureau of Prisons ("BOP"). While in the custody and care of BOP, Malesko was diagnosed with a heart condition, which was treated with prescription medication. On February 2, 1994, Malesko was transferred to Le Marquis Community Corrections Center, a halfway house where he was to serve out the balance of his sentence. The halfway house is operated on behalf of BOP by CSC, a private corporation.
 
 
 3
 Malesko was assigned to living quarters on the fifth floor of the halfway house and was permitted to use the elevator to travel from the lobby to his room. On or about March 1, 1994, however, CSC allegedly instituted a policy requiring inmates residing below the sixth floor to use only the staircase to travel from the first-floor lobby to their rooms. Despite CSC's policy, Malesko claims that he was permitted to use the elevator because CSC staff knew of his medical condition. According to Malesko, however, on March 28, 1994, a CSC employee prevented him from using the elevator to go from the lobby to his room on the fifth floor. The employee instead directed Malesko to climb the staircase, even though Malesko reminded the employee of his heart condition. While climbing the stairs, Malesko suffered a heart attack, fell, and injured himself. Malesko also claims that approximately ten days prior to this incident, he had run out of the medication prescribed for his heart condition, and that CSC had failed to replenish his medication as of that date.
 
 
 4
 On March 27, 1997, Malesko filed a pro se action against CSC in the United States District Court for the Southern District of New York, claiming violations of his rights in connection with the foregoing. Malesko did not name any specific individuals as defendants; instead, he named ten "unknown" "DOE" defendants. Malesko's complaint bore the following caption:
 
 
 5
 JOHN E. MALESKO, Plaintiff -against- CORRECTIONAL SERVICES CORPORATION FORMERLY KNOWN AS ESMOR CORRECTIONAL SERVICES INC., "JOHN DOE #1 TO JOHN DOE #10" INCLUSIVE, THE NAMES OF SAID JOHN DOE DEFENDANTS ARE PRESENTLY UNKNOWN BUT INTENDED TO INDICATE OFFICERS AND MANAGERS AND GUARDS OF THE CORPORATE DEFENDANT
 
 
 6
 On February 2, 1999, Malesko, by counsel, filed an Amended Complaint, which was identical to the initial complaint in all material respects except that it substituted Jorge Urena as "JOHN DOE DEFENDANT #1" and alleged that Urena was the CSC employee who prevented Malesko's use of the elevator on March 28, 1994 and directed Malesko to climb the stairs.[1] On February 10, 1999, CSC moved to dismiss the Amended Complaint. On February 17, 1999, Malesko cross-moved seeking to file a second amended complaint to name as "DOE" defendants additional CSC employees allegedly responsible for Malesko's injuries.
 
 
 7
 On July 28, 1999, the district court entered a judgment granting CSC's motion to dismiss the Amended Complaint, denying Malesko's motion to file a second amended complaint, dismissing the Amended Complaint as against Urena and instructing the Clerk of Court to close the case. See Malesko v. Corrections Servs. Corp., No. 97 Civ. 4080 (JSM), 1999 WL 549003 (S.D.N.Y. July 28, 1999). The district court treated Malesko's Amended Complaint as raising claims under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 397 (1971), which provides for a cause of action for damages against federal agents who violate constitutional rights.
 
 
 8
 The district court dismissed the Amended Complaint as to CSC on two grounds. First, it held that Malesko could not bring a Bivens claim against a corporation such as CSC because, according to the district court, "[a] Bivens action may only be maintained against an individual." Id. at *1. Second, the district court held that, even if Malesko could assert a Bivens claim against a private corporation, CSC was nevertheless "shielded from liability" because CSC had "contracted with the federal government to carry out a project on behalf of the government." Id.
 
 
 9
 The district court also denied Malesko's motion to file a second amended complaint naming additional specific CSC employees as defendants. The district court found that because the statute of limitations had run on Malesko's Bivens claims as of March 28, 1997 (one day after he filed his initial complaint), Malesko's subsequent assertion of such claims against additional defendants was time-barred and therefore a "futile amendment" under Fed R. Civ. P. 15. See id. at *2. The district court rejected Malesko's contention that his substitution of specifically named defendants for the "DOE" defendants should "relate back" to the filing date of his initial complaint. See id. at *2-*3.
 
 
 10
 The district court dismissed the Amended Complaint as to Urena on similar grounds, finding that the Amended Complaint substituting Urena as a defendant had been filed nearly two years after the statute of limitations had run. See id. at *3. This appeal followed.
 
 DISCUSSION
 I. Claims Against CSC
 
 11
 Because the district court dismissed Malesko's claims against CSC on the pleadings, we review that decision de novo, accepting as true all material factual allegations in the complaint. See Jones v. New York Div. of Military and Naval Affairs, 166 F.3d 45, 48 (2d Cir. 1999).
 
 A. Bivens Claims and Private Corporations
 
 12
 We note initially that the question of whether a Bivens claim may lie against a private corporation is an issue of first impression in this Circuit. The district court dismissed Malesko's Bivens claim against CSC because it concluded that a Bivens claim may only be asserted against an individual federal agent, not against private corporations such as CSC. The district court reached this result through a purported application of the Supreme Court's decision in FDIC v. Meyer, 510 U.S. 471 (1994), which held that Bivens claims may not be brought against agencies of the federal government. See Malesko, 1999 WL 549003 at *1 (citing Meyer, 510 U.S. at 483-87). The district court did not explain why Meyer's holding regarding federal agencies precluded a Bivens claim against CSC, which is not a federal agency. Reviewing this question de novo, we now hold that a private corporation acting under color of federal law may be subject to a Bivens claim.
 
 
 13
 Although the issue is new in this Circuit, several circuit courts recognized prior to the Meyer decision that Bivens-type claims could be asserted against private corporations so long as the corporations engaged in "federal action," i.e., they acted under color of federal law. See, e.g., Schowengerdt v. General Dynamics Corp., 823 F.2d 1328 (9th Cir. 1987) (holding that private corporation employed by Department of Navy to provide security services would be subject to Bivens claims if, on remand, its actions were found to constitute federal action); Gerena v. Puerto Rico Legal Serv., Inc., 697 F.2d 447 (1st Cir. 1983) (recognizing that private entities may be subject to Bivens claims, but dismissing claims at issue against legal assistance corporation because it did not engage in federal action); Dobyns v. E-Systems, Inc., 667 F.2d 1219 (5th Cir. 1982) (permitting Bivens claim against private contractor that supplied personnel, materials, transportation and services to federal government); Yiamouyiannis v. Chemical Abstracts Serv., 521 F.2d 1392 (6th Cir. 1975) (per curiam) (remanding for factual determination of whether private corporation engaged in federal action for purposes of Bivens). During this pre-Meyer time period, no circuit court ever held that private entities were not subject to Bivens claims.
 
 
 14
 In 1994, the Supreme Court addressed in Meyer whether "to expand the category of defendants against whom Bivens-type actions may be brought to include not only federal agents, but federal agencies as well." 510 U.S. at 484. Meyer involved a Bivens claim against the Federal Savings and Loan Insurance Corporation based on an alleged violation of an individual's due process rights. See id. at 484-85. The Court, noting that no Court of Appeals decision other than the decision on appeal had ever implied a Bivens cause of action directly against a federal agency, declined to do so for several reasons. First, part of the rationale for creating the Bivens cause of action against federal officials had been to compensate for the fact that "a direct action against the government was not available." Id. at 485. Second, allowing Bivens suits against agencies would contravene "the purpose of Bivens [which] is to deter the officer." Id. The Supreme Court explained that, because a plaintiff bringing a Bivens claim against an agency could thereby avoid facing the qualified immunity defense available to officers, "there would be no reason for aggrieved parties to bring damages actions against individual officers" and "the deterrent effects of the Bivens remedy would be lost." Id. Finally, the Court, observing that "a direct action for damages against federal agencies . . . would be creating a potentially enormous financial burden for the Federal Government," refused to expand the government's direct liability without congressional legislation to that effect. Id. at 486.
 
 
 15
 Although Meyer addressed only whether Bivens claims could be brought against federal agencies and thus, on its face, did not appear to implicate the question of whether a private corporation could be sued under Bivens, other circuits have subsequently reached differing conclusions regarding its impact on such claims. In the D.C. Circuit, the Court of Appeals has held that Meyer precludes Bivens suits against private entities acting under color of federal law, thereby overruling an earlier pre-Meyer D.C. Circuit decision allowing such claims. See Kauffman v. Anglo-American School of Sofia, 28 F.3d 1223 (D.C. Cir. 1994), overruling Reuber v. United States, 750 F.2d 1039 (D.C. Cir. 1985).[2] Declaring in Kauffman that its decision was "controlled by FDIC v. Meyer," the D.C. Circuit, over a vigorous dissent by then-Chief Judge Mikva, held that Bivens claims could not be asserted against the Anglo-American School of Sofia, a "private and independent organisation" established by the U.S. Department of State "to provide elementary-level instruction to the children of American and British diplomats stationed in Sofia, Bulgaria." 28 F.3d at 1224 (internal quotation marks omitted). The Kauffman majority reasoned that because a private entity must act under color of federal law in order to be subject to Bivens, such an entity is "equivalent" to a federal agency and, under Meyer, must be treated as "if [it] were really a federal agency." Id. at 1227.
 
 
 16
 The Kauffman majority, echoing Meyer's rationale that the deterrence purpose of Bivens would be frustrated if claims could be asserted against federal agencies, found that employees of private entities would be undeterred from engaging in unconstitutional conduct if claims could be asserted against their employers. See id. at 1227. The court similarly adopted Meyer's reasoning that Bivens claims against federal agencies would create a "potentially large financial drain on the government" and concluded that the "diversion of resources from a private entity created to advance federal interests has effects similar to those of diversion of resources directly from the [federal] Treasury" because such costs would be passed on to the government. Id. at 1227-28. The Kauffman majority thus held that Meyer's reasoning precluded Bivens claims against private entities acting under color of federal law. Id. at 1228.
 
 
 17
 In contrast, the Sixth Circuit in Hammons v. Norfolk Southern Corp., 156 F.3d 701 (6th Cir. 1998), concluded that "[n]othing in Meyer prohibits a Bivens claim against a private corporation that engages in federal action," and held that such claims should be allowed. Id. at 705. The Hammons court observed that while Meyer had focused on Bivens's deterrence rationale in concluding that claims should not be asserted against federal agencies, "the primary goal of Bivens was to provide a remedy for victims of constitutional violations by federal agents where no other remedy exists, regardless of whether the official would be deterred in the future from engaging in such conduct." Id. at 706 (citing Bivens, 403 U.S. at 407-08 (Harlan, J., concurring)). The court therefore concluded that "the importance of remedying constitutional violations" favored the allowance of Bivens claims against private entities acting under color of federal law regardless of whether such allowance deterred future violations. Id. The Hammons court also found, in contrast to the D.C. Circuit, that Meyer's concern about "the potentially enormous financial burden on the Government" was inapplicable with respect to private corporations because claims against private corporations do not directly impact the "federal purse" and thus "do[] not implicate federal fiscal policy." Id. (citations and internal quotation marks omitted).
 
 
 18
 Having determined that "Meyer [was] not dispositive" on the matter, id. at 706, the Sixth Circuit proceeded to address whether private corporations should be subject to Bivens claims. The court observed that Bivens claims against federal officers have consistently been treated in the same manner as claims against state officers under 42 U.S.C. §1983 (1994). See id. at 707 ("[T]he standards of liability in Bivens actions are similar to the standards under § 1983. Both the Supreme Court and this Court have noted that actions brought under § 1983 raise identical concerns as those raised in Bivens actions." (citing Butz v. Economou, 438 U.S. 478, 500 (1978))). The court further noted that "[i]t is undisputed that corporations engaging in state action can be sued under § 1983." Id. (citations omitted). Accordingly, the Hammons court held that corporations engaging in federal action should, by analogy, be subject to Bivens claims. See id. at 708. In so holding, the court observed that it joined the Courts of Appeals for the First, Fifth and Ninth Circuits in their conclusions (albeit pre-Meyer) that a Bivens claim may be brought against private corporations engaging in federal action. See id.
 
 
 19
 We find the Sixth Circuit's analysis in Hammons persuasive and, substantially for the reasons articulated by that court, we hold that a private corporation acting under color of federal law may be sued under Bivens. As an initial matter, we do not believe that Meyer is dispositive here because private entities acting on behalf of the federal government are not the equivalent of federal agencies. In Cohen v. Empire Blue Cross, 176 F.3d 35 (2d Cir. 1999), we found that Empire Blue Cross, acting as a fiscal intermediary on behalf of the government to process Medicare claims, was akin to an agent of the government and not a federal agency. See id. at 42 ("[Defendant] is a private not-for-profit corporation established under the laws of the State of New York. It is not funded by the United States, and the United States has no proprietary interest in its operations . . . . [It] may act as an agent for the government, [but] it is not an institutional arm of the government such as a department, commission, board, or bureau."). We see no reason to treat differently other private corporations acting on behalf of the government.
 
 
 20
 Moreover, the reasons the Supreme Court articulated in Meyer for declining to extend liability to federal agencies are not compelling with respect to the question of whether private corporations should be subject to Bivens liability. Although deterring wrongdoing by individuals is an important goal of Bivens liability, we find an extension of such liability to be warranted even absent a substantial deterrent effect in order to accomplish the more important Bivens goal of providing a remedy for constitutional violations. Justice Harlan, in his concurring opinion in Bivens, elaborated upon the relationship between these two goals:
 
 
 21
 I agree with the Court that the appropriateness of according Bivens compensatory relief does not turn simply on the deterrent effect liability will have on federal official conduct. Damages as a traditional form of compensation for invasion of a legally protected interest may be entirely appropriate even if no substantial deterrent effects on future official lawlessness might be thought to result. Bivens, after all, has invoked judicial processes claiming entitlement to compensation for injuries resulting from allegedly lawless official behavior, if those injuries are properly compensable in money damages. I do not think a court of law-vested with the power to accord a remedy-should deny him his relief simply because he cannot show that future lawless conduct will thereby be deterred.
 
 
 22
 Bivens, 403 U.S. at 407-08 (Harlan, J., concurring). In any event, we are not convinced that allowing Bivens claims against private corporations would undermine the deterrence purpose of Bivens. Even assuming a plaintiff would decline to sue the offending employee and sue only the employer, we believe that an employer facing exposure to such liability would be motivated to prevent unlawful acts by its employees. Furthermore, although a private entity contracting to carry out governmental functions might pass on the costs of Bivens liability to the government, we do not believe such liability has the type of direct impact on federal fiscal policy that the Supreme Court in Meyer was concerned would result from imposing Bivens liability directly upon federal agencies.[3]
 
 
 23
 Finally, as noted above, several Courts of Appeals before Meyer's issuance recognized that private corporations may be subject to Bivens claims. We are not persuaded that the Supreme Court implicitly overruled this long line of cases in the Meyer opinion without making reference to any of them. We therefore find that Meyer does not control our analysis of whether Bivens claims may be brought against private corporations.
 
 
 24
 In deciding that Bivens liability should extend to private corporations, we are influenced strongly by the law governing § 1983 claims. We have consistently treated Bivens and §1983 actions as analogous for most purposes, and we "have typically incorporated § 1983 law into Bivens actions." Tavarez v. Reno, 54 F.3d 109, 110 (2d Cir. 1995) (per curiam) (citing Carlson v. Green, 446 U.S. 14, 18-20 (1980)); see also Ayeni v. Mottola, 35 F.3d 680, 688 n.10 (2d Cir. 1994); Ellis v. Blum, 643 F.2d 68, 84 (2d Cir. 1981). The Supreme Court has made it clear that private corporations engaging in state action may be sued under § 1983. See Lugar v. Edmonson Oil Co., 457 U.S. 922, 936-37 (1982). We see no reason not to incorporate that law into the Bivens context and permit suits against private corporations engaging in federal action. Moreover, we find that extending Bivens liability to reach private corporations furthers Bivens's overriding purpose: providing redress for violations of constitutional rights. See Bivens, 403 U.S. at 407-08 (Harlan, J., concurring).
 
 
 25
 Accordingly, we join the Courts of Appeals for the First, Fifth, Sixth and Ninth Circuits and hold that a private corporation acting under color of federal law may be subject to liability under Bivens.
 
 B. Government Contractor Defense
 
 26
 In addition to finding that a Bivens action could not be maintained against CSC, the district court held that CSC would have been immune from such a suit in any event by virtue of the immunity for government contractors set forth in Boyle v. United Technologies, Corp., 487 U.S. 500 (1988). See Malesko, 1999 WL 549003 at *1 (citing Boyle, 487 U.S. at 505-09; Yearsley v. W.A. Ross Const. Co., 309 U.S. 18, 19 (1940); Norwood v. Esmor, Inc., No. 95 Civ. 8281 (LAP), 1997 WL 65913 (S.D.N.Y. Feb. 13, 1997)). We disagree and hold that on the record presented to the district court, CSC may not avail itself of the government contractor defense.
 
 
 27
 In Boyle, the Supreme Court articulated the standard for determining when federal law shields government contractors from state tort liability arising from design defects in military equipment. See Boyle, 487 U.S. at 512. The Supreme Court held:
 
 
 28
 Liability for design defects in military equipment cannot be imposed, pursuant to state law, when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States.
 
 
 29
 Boyle, 487 U.S. at 512. The Supreme Court reasoned that "selection of the appropriate design for military equipment" involved "judgment as to the balancing of technical, military, and even social considerations" that should not be "second-guess[ed] . . . through state tort suits against contractors" carrying out the design specifications of the federal government. Id. at 511 (citations and internal quotation marks omitted). Thus, the Court concluded that "state law which holds Government contractors liable for design defects in military equipment does in some circumstances present a 'significant conflict' with federal policy and must be displaced." Id. at 512.
 
 
 30
 Although the government contractor defense has primarily developed in the context of military contractors, the defense has been applied more broadly by some courts to protect contractors in non-military contexts. See, e.g., Boruski v. United States, 803 F.2d 1421, 1430 (7th Cir. 1986) (defense applies in "civilian relationships" where "a contractor has acted in the sovereign's stead and can prove the elements of the defense") (citation and internal quotation marks omitted); Burgess v. Colorado Serum Co., 772 F.2d 844, 846 (11th Cir. 1985) ("Both the history of the defense and its general rationale lead us to the conclusion that it would be illogical to limit the availability of the defense solely to 'military' contractors"). This Circuit has never expressly addressed the issue.[4] However, this case does not present the appropriate forum in which to do so since, even assuming the potential applicability of the defense outside the military context, the requirements necessary for its application are not satisfied here.
 
 
 31
 The government contractor defense only shields a government contractor from claims arising out of its actions where the government has exercised its discretion and judgment in approving precise specifications to which the contractor must adhere. See Lewis v. Babcock Indus., Inc., 985 F.2d 83, 86-87 (2d Cir. 1993) (holding that government contractor defense requires "that the design feature in question was considered by Government officers, and not merely by the contractor"). In other words, "[s]tripped to its essentials," the government contractor defense is "to claim, 'The Government made me do it.'" In re Joint Eastern and Southern Dist. New York Asbestos Litg., 897 F.2d 626, 632 (2d Cir. 1990). Here, Malesko alleges that various CSC policies or practices led to his injury - assigning him to a room on the fifth floor, forbidding him from using the elevator, and failing to refill his heart medication prescription - but neither he nor CSC claims that the government played any role in formulating or approving these policies or practices. Because no allegation exists in the record before the district court that the government played any role in these decisions, we conclude that the district court erred in holding that CSC was protected from liability by the government contractor defense. See, e.g., In re Hawaii Asbestos Cases, 960 F.2d 806, 813 (9th Cir. 1992) (holding that suppliers of insulation products containing asbestos to the Navy could not invoke defense where suppliers "simply failed to allege, let alone establish, that . . . they were acting in compliance with 'reasonably precise specifications' imposed on them by the United States") (quoting Boyle, 487 U.S. at 512).
 
 II. Claims Against Individual Defendants
 
 32
 The district court dismissed the Bivens claims against Jorge Urena on the ground that the claims were time-barred. See Malesko, 1999 WL 549003 at *3. For the same reason, the district court denied as "futile" Malesko's motion to file a second amended complaint substituting additional specific individuals for "DOE" defendants. Id. at *2-*3. We review de novo the district court's dismissal of the Bivens claims against Urena on the pleadings. See Jones, 166 F.3d at 49. We review the district court's denial of leave to amend the complaint for abuse of discretion. Id. If that denial was based on a legal interpretation, however, we review the decision de novo. Id.
 
 
 33
 In New York, the statute of limitations for bringing a Bivens action is three years from the accrual of the claim. See Chin v. Bowen, 833 F.2d 21, 24 (2d Cir. 1987). The parties do not dispute that Malesko's claim accrued on March 28, 1994, the day on which he suffered his heart attack while climbing the CSC stairs. Thus, the statute of limitations on Malesko's Bivens claims expired on March 28, 1997, one day after he filed his original complaint.
 
 
 34
 Malesko, however, did not identify any of the alleged "DOE" defendants listed on his original complaint until February 2, 1999, when he submitted an Amended Complaint substituting Jorge Urena as "JOHN DOE DEFENDANT #1." On February 17, 1999, Malesko moved for leave to file a second amended complaint that would purportedly have substituted additional CSC employees as "DOE" defendants. It is therefore clear from the record that the statute of limitations expired on Malesko's Bivens claims before he added or sought to add any individual defendants. Malesko attempts to avoid this conclusion by arguing that, pursuant to Fed. R. Civ. P. 15(c), the date of filing for his amendments identifying individual defendants may "relate back" to the timely date on which the original complaint was filed. See Aslanidis v. United States Lines, Inc., 7 F.3d 1067, 1075 (2d Cir. 1993) (stating that "'John Doe' pleadings" can "be used to circumvent statutes of limitations" where "all the specifications of Fed. R. Civ. P. 15(c) are met").
 
 
 35
 Under Rule 15(c), when an attempt is made to bring in a new party, the date of the amendment adding that party will "relate back" to the date of the original complaint only when (1) the claim arises out of the same conduct originally pleaded and (2) within (ordinarily) 120 days of the original filing date,
 
 
 36
 the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.
 
 
 37
 Fed. R. Civ. P. 15(c)(3) (emphasis added). Thus, in order to have the filing dates for the Amended Complaint and second amended complaint relate back to the date of the original Complaint, Malesko must show, inter alia, that he failed to name Urena and other specific CSC employees due to a "mistake concerning the identity of the proper party." Fed. R. Civ. P. 15(c)(3)(B). A plaintiff is not considered to have made such a "mistake," however, if the plaintiff knew that he was required to name an individual as a defendant but did not do so because he did not know the individual's identity. See Barrow v. Wethersfield Police Dep't, 66 F.3d 466, 470 (2d Cir. 1996) ("Rule 15(c) does not allow an amended complaint adding new defendants to relate back if the newly-added defendants were not named originally because the plaintiff did not know their identities.").
 
 
 38
 Here, it is clear that Malesko believed that there existed individual defendants who were potentially liable for his injuries, but did not know their exact identities prior to the expiration of the statute of limitations. As revealed by the caption from his original complaint, Malesko "INTENDED TO INDICATE OFFICERS AND MANAGERS AND GUARDS OF THE CORPORATE DEFENDANT [CSC]," but he did not do so because "THE NAMES OF SAID JOHN DOE DEFENDANTS ARE PRESENTLY UNKNOWN." Under these circumstances, Malesko cannot avail himself of Rule 15(c) such that his untimely substitution of specifically named individuals for "DOE" defendants may "relate back" to the date he filed his original complaint. See Tapia-Ortiz v. Doe, 171 F.3d 150, 151-52 (2d Cir. 1999) (holding that plaintiff, who, in his original complaint, sued "Doe" defendant officers who allegedly applied excessive force, could not "relate back" his amendment naming specific officers two years after the statute of limitations had run); Barrow, 66 F.3d at 470 (holding that plaintiff named "John Does" because he did not know the arresting officers' names and that, "[s]ince the new names were [subsequently] added not to correct a mistake but to correct a lack of knowledge, the requirements of Rule 15(c) for relation back are not met").
 
 
 39
 We therefore affirm the district court's decision dismissing the Amended Complaint as to Urena and denying Malesko's motion to file the second amended complaint because these claims were barred by the statute of limitations.
 
 CONCLUSION
 
 40
 For the foregoing reasons, we affirm the district court's dismissal of Bivens claims against defendant Urena and its denial of leave to file the second amended complaint, but vacate the district court's dismissal of claims against CSC and remand for further proceedings consistent with this opinion.[5]
 
 
 
 Notes:
 
 
 *
 The Honorable Ellsworth A. Van Graafeiland was originally assigned as a member of the panel but, due to illness, did not attend oral argument or participate in the disposition of this appeal. The appeal is being determined by the remaining members of the panel, who are in agreement. See 2d Cir. R. § 0.14(b); Murray v. National Broad. Co., 35 F.3d 45, 46 (2d Cir. 1994).
 
 
 [1]
 Defendants-Appellees do not dispute that the CSC employee in question was Jorge Urena.
 
 
 [2]
 In Reuber, the D.C. Circuit had held that Bivens encompassed actions against private parties acting under color of federal law, and had remanded the case for a determination of whether the defendant, an operator of a government-owned facility pursuant to a contract with the National Cancer Institute, had so acted. Id.
 
 
 [3]
 In our view, the non-unanimous Kauffman decision finding such impact is incorrect, or, at best, resulted from the fact that the entity at issue was arguably a federal government agency. Although the Kauffman majority referred to the defendant school as a "private" entity, the school had been set up by the U.S. Department of State, part of its governing board was appointed by a U.S. ambassador, and it was directly funded, in part, by the U.S. government. See Kauffman, 28 F.3d at 1224.
 
 
 [4]
 We also question, although need not decide, whether the government contractor defense may ever be invoked as a shield against Bivens claims. As the Court in Boyle explained, the government contractor defense exists to protect against situations where the "application of state law [claims] would frustrate specific objectives of federal legislation." Id. at 507 (internal quotation marks omitted) (emphasis added). The Bivens cause of action, however, was created to advance federal constitutional interests. Such claims are not state law claims but rather arise under the U.S. Constitution.
 
 
 [5]
 In a discussion spanning less than one page of his appellate brief, Malesko argues for the first time that he is entitled to recover under the Americans With Disabilities Act, 42 U.S.C. § 12131, et seq., and the Rehabilitation Act of 1973, 29 U.S.C. § 794. Although CSC invites us to address the merits of these claims, we decline to do so. The district court may consider the arguments on remand after the issue has been adequately briefed. See Able v. United States, 88 F.3d 1280, 1292 (2d Cir. 1996) (declining to address the merits of a claim where the issue was not considered in the district court and remanding for such consideration).