**Milton FAIRWEATHER, Institutional ID No. 04960–033, Plaintiff,**

v.

**GILES DALBY CORRECTIONAL FACILITY, et al., Defendants.**

**No. CIV. A. 500CV072–BG.**

United States District Court, N.D. Texas, Lubbock Division.

May 30, 2001.

---

Milton Fairweather, Eden, TX, pro se.

### ORDER DISMISSING CASE WITH PREJUDICE

KOENIG, United States Magistrate Judge.

Plaintiff, Milton Fairweather ("Fairweather"), proceeding *pro se* and *in forma pauperis,* has filed a claim pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), alleging that he has been the victim of excessive force and deliberate indifference to his serious medical needs in contravention of the Eighth Amendment. Fairweather names the Giles Dalby Correctional Facility, John Doe, Warden, Giles Dalby Facility, Captain Gearhart, Janet Reno, and the Federal Bureau of Prisons as Defendants.

Fairweather has consented to proceed before the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). An evidentiary hearing was held on May 15, 2000, in the United States Magistrate Judge's courtroom in Lubbock, Texas, pursuant to *Spears v. McCotter,* 766 F.2d 179 (5th Cir.1985). After reviewing Fairweather's complaint, the testimony given under oath, the authenticated records provided, and the relevant case law, the court is of the opinion that the case should be dismissed with prejudice.

**924**

## I. STATEMENT OF THE CASE

Fairweather alleges that on January 14, 2000, at approximately 5:00 p.m., he and other inmates were sitting in the cell block dayroom watching television when Captain John Doe approached all inmates and ordered them to return to their cells for lockdown. . As Fairweather proceeded to his cell, the Captain left and returned a few seconds later with personnel in riot gear. Fairweather claims that without warning, personnel started to release tear gas, even though he had already returned to his cell. He also complains that he was locked in his cell, and prison authorities disconnected the water supply and turned off the air conditioners, leaving him to suffocate, choke and gasp for hours. Fairweather alleges that the ordeal lasted eight hours before water and air were restored. He claims he begged for medical treatment but prison officials refused to help him. Since the incident, he complains of severe headaches, dizziness, chest pain, and constant nosebleeds.

## II. LEGAL STANDARD

■ Under 28 U.S.C. § 1915(e), the court is required to dismiss the complaint or any portion of the complaint if it is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary damages from a defendant who is immune from such relief. A claim may be dismissed as frivolous if the claim lacks an arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir.1998). An evidentiary hearing may be used to assist the court in determining whether the cases should be dismissed. *Spears*, 766 F.2d at 181–82. Dismissals can be based on authenticated prison records. *Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir.1995) (per curiam).

## III. DISCUSSION

■ *Bivens* established that the victims of a constitutional violation by a federal agent have a right to recover damages against the individual official in federal court despite the absence of any statute conferring such a right. *Carlson v. Green*, 446 U.S. 14, 18, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980).[1] "[A] plaintiff seeking a damages remedy under the Constitution must

1. Whether a private corporation acting under color of federal law may be subject to a *Bivens* claim is unclear. There is currently a split among the circuits on this issue. In *FDIC v. Meyer*, 510 U.S. 471, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994), the Supreme Court of the United States declined to extend *Bivens* actions to agencies of the federal government. In the wake of the *Meyer* decision, the D.C. Circuit Court of Appeals held that *Meyer* precluded *Bivens* suits against private entities acting under color of federal law. This overruled an earlier pre-*Meyer* D.C. Circuit Court decision allowing such claims. *See Kauffman v. Anglo–American School of Sofia*, 28 F.3d 1223 (D.C.Cir.1994), *overruling Reuber v. United States*, 750 F.2d 1039 (D.C.Cir.1984) (held that *Bivens* encompasses actions against private parties acting under color of federal law, and remanded for a determination of whether the defendant, an operator of a gov-

ernment-owned facility pursuant to a contract with the National Cancer Institute, had so acted). In contrast, the Sixth Circuit Court of Appeals and, most recently, the Second Circuit Court of Appeals have held that *Bivens* liability extends to private corporations. *See Hammons v. Norfolk S. Corp.*, 156 F.3d 701 (6th Cir.1998); *Malesko v. Corr. Serv. Corp.*, 229 F.3d 374 (2d Cir.2000), *cert. granted*, *Corr. Serv. Corp. v. Malesko*, — U.S. —, 121 S.Ct. 1224, 149 L.Ed.2d 134 (2001).

Prior to the *Meyer* decision, the Fifth Circuit Court of Appeals permitted a *Bivens* claim against a private contractor that supplied personnel, materials, transportation, and services to the federal government. *See Dobyns v. E–Systems, Inc.*, 667 F.2d 1219 (5th Cir.1982). Based on *Dobyns*, this court assumes that a *Bivens* claim may be stated against a private corporation acting under color of federal law.

first demonstrate that his constitutional rights have been violated." *Davis v. Passman*, 442 U.S. 228, 248, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979).

### A. *Excessive Force Claim*

 A *Bivens* action is akin to one under 42 U.S.C. § 1983. *See Andrade v. Chojnacki*, 65 F.Supp.2d 431, 452 (W.D.Tex.1999). The standards of liability in *Bivens* actions are similar to the standards under § 1983. *See Butz v. Economou*, 438 U.S. 478, 500, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978); *Abate v. S. Pac. Transp. Co.*, 993 F.2d 107, 110 n. 14 (5th Cir.1993). As with a § 1983 claim, in order to prove a violation under the Eighth Amendment for excessive use of force, the plaintiff must show that the defendant unnecessarily and wantonly inflicted pain on him. *Whitley v. Albers*, 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). Whether a use of force against a prison inmate is unnecessary or wanton depends on whether force was applied in a good faith effort to maintain or restore discipline, or whether it was done maliciously or sadistically to cause harm. *Hudson v. McMillian*, 503 U.S. 1, 7, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992); *Whitley*, 475 U.S. at 319–21, 106 S.Ct. 1078; *Baldwin v. Stalder*, 137 F.3d 836, 838–39 (5th Cir. 1998).

Here, Fairweather's recollection of events is contradicted by videotape of the incident that occurred on January 20, 2000.[2] The events of that evening began with a work stoppage in the kitchen which resulted in a limited institutional lockdown, restricting all inmates to the dayroom of their respective Inmate Housing Units.[3] At approximately 4:55 p.m., Captain Gearhart entered the dayroom where Fairweather was housed (3 Building, D–Wing) and ordered inmates to go to their cells for the purpose of the count. Each inmate, including Fairweather, was then specifically ordered to return to his cell. At 5:04 p.m., Captain Gearhart, Lt. Marshall Rebeles, and a force-cell-move team entered the D–Wing, where another order was given for inmates to return to their cells. Lt. Rebeles repeated the order in Spanish. At this time, the video shows Fairweather standing outside his cell 3D–23. Captain Gearhart then gave another order for inmates to go to their cells. The inmates refused the order. At 5:10 p.m., Captain Gearhart received permission from the Warden to administer chemical agents to gain compliance with the orders. In the video, Fairweather is observed still standing outside of his cell. At 5:12 p.m., Fairweather is observed entering his cell. At 5:13 p.m., cell block 3D was secured.

**2.** Fairweather states in his complaint that the tear gas incident occurred on or about January 14, 2000. According to authenticated records provided by the Giles Dalby Facility, the incident occurred on January 20, 2000. At the *Spears* hearing, Fairweather testified that he knew the date was January 14th because he was transferred from Giles Dalby a week after being in segregation for five days. According to authenticated records, Fairweather arrived at the Eden Detention Center on January 31, 2000.

**3.** According to institutional records, the lockdown was initiated when three inmates involved in a verbal altercation with a corrections officer departed the Food Service Department, and all other inmates assigned to the Food Service Department also left their job assignments. The oncoming shift of Food Service Department inmates failed to report to their job assignments as well, resulting in an inability to serve a lunch meal. After the lockdown was initiated, a group of staff members was assembled to initiate individual interviews with all inmates assigned to the Giles Dalby Facility. Upon making rounds of individual Inmate Housing Units, officials observed that the inmates had removed all inmate property from their assigned cells, including all bedding, to the dayroom area.

██ Fairweather contends that he was not a part of the work stoppage and that the use of tear gas was unfair for this reason. However, based upon the actions of corrections officials, the use of force in question was a good-faith attempt to maintain order and discipline. The Supreme Court of the United States has cautioned courts that when the "ever-present potential for violent confrontation and conflagration," *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 132, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977), ripens into *actual* unrest and conflict, the admonition that "a prison's internal security is peculiarly a matter normally left to the discretion of prison administrators," *Rhodes v. Chapman*, 452 U.S. 337, 349 n. 14, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981), carries special weight.[4] Fairweather was outside his cell when the inmates were ordered to return to their cells for count, and he and the other inmates received several orders to return to their cells. Fairweather testified at the *Spears* hearing that the striking inmates remained outside their cells after being ordered to vacate the dayroom for count. The inmates were told that a failure to return to their cells would result in the use of chemical agents. Fairweather did not comply with the orders when given. The facts here do not show that an excessive use of force was committed on January 20, 2000, and as such, Fairweather's claim should be dismissed with prejudice as frivolous.

4. "Prison administrators ... should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).

> That deference extends to a prison security measure taken in response to an actual confrontation with riotous inmates, just as

## B. *Deliberate Indifference to Serious Medical Needs*

The claim at hand charges a violation of Fairweather's rights under the Eighth Amendment to the United States Constitution: "Excessive bail shall not be required, nor excessive force imposed, nor cruel and unusual punishment inflicted." Of course, the Amendment does not, by its precise words, mandate a certain level of medical care for prisoners. On the other hand, the "cruel and unusual punishments" clause has been interpreted to mandate the provision of medical care to prisoners. *See, e.g., Farmer v. Brennan*, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) ("cruel and unusual punishments" clause imposes duty on prison officials to "ensure that inmates receive adequate food, clothing, shelter, and medical care").

██ Deliberate indifference to serious medical needs may be manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. *Estelle v. Gamble*, 429 U.S. 97, 104–05, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). "[F]acts underlying a claim of 'deliberate indifference' must clearly evince the medical need in question and the alleged official dereliction." *Johnson v. Treen*, 759 F.2d 1236,-1238 (5th Cir.1985) (*citing Woodall v. Foti*, 648 F.2d 268 (5th Cir.1981)). "The legal conclusion of 'deliberate indifference,'

> it does to prophylactic or preventive measures intended to reduce the incidence of these or any other breaches of prison discipline. It does not insulate from review actions taken in bad faith and for no legitimate purpose, but it requires that neither judge nor jury freely substitute their judgment for that of officials who have made a considered choice.
> *Whitley*, 475 U.S. at 321–22, 106 S.Ct. 1078.

therefore, must rest on facts clearly evincing 'wanton' actions on the part of the defendants." *Johnson*, 759 F.2d at 1238.[5]

Fairweather has alleged that he was denied medical treatment after the tear gas incident on January 20, 2000. Videotape of the incident shows that at 6:18 p.m., corrections officers visually checked and verbally asked each inmate assigned to 3 Building D–Wing if he needed medical attention. One inmate was removed at that time for fresh air at the direction of the medical staff. Additional videotape shows Fairweather being interviewed at 1:59 a.m. on January 21, 2000, by medical and security personnel, asking if he needed medical attention. Fairweather stated that he did *not* require medical attention. At the *Spears* hearing, Fairweather· agreed that he refused medical care at that time. Authenticated medical records show that Fairweather submitted several requests for medical treatment in March and April of 2000, complaining of sore throat and headaches, and was seen by medical staff and received medication, when deemed appropriate.

Here, Fairweather has failed to allege facts sufficient to state a claim of deliberate indifference to his serious medical needs. For this reason, his claim should be dismissed.

## IV. CONCLUSION

Based upon the foregoing reasoning, the court finds that Plaintiff's Complaint has no basis in fact or law. It is therefore,

**ORDERED** that this civil rights complaint be **DISMISSED** with prejudice as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i) and 1915A(b)(1). This dismissal shall count as a qualifying dismissal under 28 U.S.C. § 1915(g) and *Adepegba v. Hammons*, 103 F.3d 383 (5th Cir.1996). Dismissal of this action does not release Plaintiff or the institution where he is incarcerated from the obligation to pay any filing fee previously imposed. *See Williams v. Roberts*, 116 F.3d 1126, 1128 (5th Cir.1997) (*citing In re Tyler*, 110 F.3d 528, 529–30 (8th Cir.1997)).

It is further

**ORDERED** that all pending motions not previously considered by the court are **DENIED** as moot.

This is a consent case assigned to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) with authority to enter Judgment. Any appeal shall be to the Court of Appeals for the Fifth Circuit in accordance with 28 U.S.C. § 636(c)(3).

A copy of this Order shall be mailed, by first class mail, to all parties appearing *pro se* and to the following: Warden, Giles Dalby Correctional Facility, 805 N. Avenue F, Post, Texas 79356; Federal Bureau of Prisons, 4211 Cedar Springs Road, Suite 300, Dallas, Texas 75219; and the United States Attorney's Office, 1205 Texas Avenue, 7th Floor, Lubbock, Texas, 79401.

---

5. Further, in the § 1983 context, the Fifth Circuit Court of Appeals has held that assertions of inadvertent failure to provide medical care or negligent diagnosis are insufficient to state a claim under § 1983. *Jackson v. Cain*, 864 F.2d 1235, 1246 (5th Cir.1989). Unsuccessful medical treatment does not give rise to a § 1983 cause of action, nor does a disagreement between an inmate and a prison physician concerning the appropriateness of certain medical care. *Banuelos*, 41 F.3d at 235;

*Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir.1991) (per curiam). Similarly, a claim that additional diagnostic techniques or forms of treatment should have been utilized is inadequate for purposes of § 1983. *Gamble*, 429 U.S. at 107, 97 S.Ct. 285. Hence, allegations of mere negligence, neglect, or medical malpractice on the part of a physician do not state an actionable claim under § 1983. *Varnado*, 920 F.2d at 321; *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir.1993).

Judgment shall be entered accordingly.

**SO ORDERED.**